## Richmond

RUSSELL E. CREWS

JAMES A. CREWS

v.

COMMONWEALTH OF VIRGINIA

No. 1010-85

Decided January 6, 1987

532

COUNSEL

Elwood V. Elliott (Traylor and Morris, P.C., on brief), for appellants.

W. Mark Dunn, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

KOONTZ, C.J. — On April 16, 1985, Russell E. Crews and James A. Crews were tried jointly without a jury and convicted of statutory burglary, in violation of Code § 18.2-91, and grand larceny, in violation of Code § 18.2-95. On this appeal we are asked to determine two issues: (1) whether the burglarized structure, a "converted school bus," was a structure included within Code § 18.2-90, and (2) whether the evidence was sufficient to sustain

the convictions of statutory burglary and grand larceny. For the reasons stated below, we reverse the convictions of statutory burglary and affirm the convictions of grand larceny.

In early February, 1985, Milton and Vanessa Mitchell moved from North Carolina and contracted with Russell and James Crews to move their mobile home onto their lot in Harbor East Mobile Home Park in Chester, Virginia. The parties also agreed that skirting panels were to be installed around this mobile home. The Mitchells owned some galvanized skirting and were told by the defendants that they could sell them some vinyl skirting. It is agreed that this conversation occurred on February 5, 1985.

On February 9, 1985, Ike Royster, president of Southern Marketing, Inc., which owned Conner Mobile Homes in Petersburg, Virginia, discovered pieces of vinyl paneling used for skirting missing from a storage unit on its property. Conner Mobile Homes' business was described as primarily retail sales of mobile homes but also the sale of accessory parts and add-on accessories including skirting. This skirting consisted of all vinyl panels in twelve foot lengths which were cut to the length of the underside of a particular mobile home from the bottom of the mobile home to the ground.

The accessories were stored in three storage units. Royster described these units: "We got three storage units here, two converted school buses and one converted older mobile home, and we have one of the school buses which are (sic) designated as bulk storage and that's where we keep all of our skirting." Royster further testified that the back door of the bus in question was altered by drilling a hole through the handle, putting in a large I-bolt and securing it with a security lock. The record contains no other information about the condition of the school bus. Specifically, the record is silent as to whether the bus remained operative even though it is clear that it was actually used only for storage at the time in question.

On February 9, 1985, Conner discovered that the handle on the bus had been broken and the panels removed. Later that day the missing panels were discovered beside the Mitchells' mobile home. Royster identified these panels as being the panels which arrived at his place of business on February 8, 1985, and were stored in the converted bus. One box was marked "Conner - Petersburg."

Royster testified that while he could not identify a particular panel, the panels matched those that were ordered for a particular job, the value of which was reflected on an invoice to Conner for $536.79.

The Mitchells both testified that Russell and James Crews came to their mobile home on February 9, 1985, at approximately 3:30 p.m. and asked if the Mitchells had seen the skirting beside their home which they had delivered. Neither of the Mitchells saw the delivery. Milton Mitchell testified that one defendant said the delivery was made on Friday night and the other defendant said the delivery was made on Saturday morning. After inspecting the skirting, Milton advised them to use his old skirting.

Russell and James Crews both testified that on February 5, 1985, they agreed to sell vinyl skirting to the Mitchells. They maintained that this skirting had been repossessed from other mobile homes. The defendants denied taking any property from Conner Mobile homes. Furthermore, they denied delivering any skirting to the Mitchell home and speaking to either of the Mitchells on February 9, 1985. They stated that they had not been to the Mitchells' home at all on that day. In addition to their testimony, they offered various alibi witnesses for their whereabouts on February 8 and 9, 1985.

The trial court overruled the defendants' motion to strike the Commonwealth's evidence at the conclusion of its case and again when the motion was made at the conclusion of all the evidence and found the defendants guilty. The defendants' motion to set aside the judgments as contrary to the law and the evidence was overruled. This appeal followed.

## I. The "Converted School Bus" Issue.

Appellants were indicted and convicted of statutory burglary pursuant to Code § 18.2-91. The indictments alleged that they "on or about February 9, 1985, did break and enter, or did enter in the nighttime that certain shop, storehouse or warehouse . . . known as Conner Mobile Homes, the same being the property of Ike Royster, with the intent to commit a felony or larceny therein." Code § 18.2-91 reads in pertinent part:

If any person do any of the acts mentioned in Code § 18.2-90 with intent to commit larceny, or any felony other than murder, rape or robbery, he shall be deemed guilty of statutory burglary . . . .

Code § 18.2-90[1] reads in pertinent part:

If any person . . . in the nighttime enter without breaking or break and enter either in the daytime or nighttime any office, shop, storehouse, warehouse, banking house, or other house, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation, with intent to commit murder, rape or robbery, he shall be deemed guilty of statutory burglary . . . .

Appellants contend that the "converted school bus" was not within the category of structures specified in Code §§ 18.2-90 and 18.2-91. The Commonwealth contends that the "storehouse" or "warehouse" language is applicable because the school bus had been "converted" into a storage unit. On the facts of this case we are not persuaded by the Commonwealth's contention.

It is undisputed that at common law a school bus could not be the subject of burglary. W. LaFave & A. Scott, *Criminal Law* § 8.13 (2d ed. 1986)(the "invaded structure [must] be the dwelling house of another"). The legislature, however, has enacted a series of statutes which modify the common law of burglary. The modifications to the common law include those in Code § 18.2-90 which extend the subject of burglary to structures other than a "dwelling house." Consequently, we must construe these penal statutes to determine whether this particular school bus was a structure among the various structures specified in Code § 18.2-90 that could be the subject of burglary. In doing so, we are guided by the principles of statutory construction enumerated in *Turner v. Commonwealth*, 226 Va. 456, 309 S.E.2d 337 (1983).

First and foremost among these principles is that the primary objective of statutory construction is to ascertain and give ef-

---

[1] Code § 18.2-90 was rewritten by the legislature in 1985 without affecting the pertinent language for our purposes here.

fect to legislative intent. A related principle is that the plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow or strained construction. Finally, because the statute in question is penal in nature, it must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute.

*Id.* at 459, 309 S.E.2d at 338 (citations omitted).

The only categories of structures which could arguably have been intended by the legislature to plainly, obviously and rationally apply to the facts in this case are "storehouse," "warehouse" or "other house." The school bus in question was not an "automobile, truck or trailer" used as a "dwelling or other place of human habitation."

■ In *Graybeal v. Commonwealth*, 228 Va. 736, 740, 324 S.E.2d 698, 700 (1985) our Supreme Court noted that the term "other house" set forth in Code § 18.2-90 was placed at the end of a list of specific references to various structures which share the common element of being permanently affixed to the ground, that is, they are realty. Accordingly, the Court held that a trailer not used as a dwelling was not an "other house" within the meaning of the statute. *Id.* Accordingly, we must decide whether the Commonwealth proved that the converted school bus in question was permanently affixed to the ground as in the case of a "storehouse" or "warehouse" and thus was part of the realty.

The record reveals that the school bus was used for storage and that the back door handle was secured by a large I-bolt and security lock. There is no other evidence of the condition of the bus. The Commonwealth places great emphasis on Royster's references to the school bus as "converted" and the fact that it was used solely for storage. We agree that whether this school bus was a storehouse or warehouse was a "question of factual determination" for the trial court. However, that determination cannot withstand appellate review if unsupported by the evidence. Here it was not. A school bus is not presumptively realty and the Commonwealth had the burden to prove that it had been so transformed. Securing the back door made the vehicle no less a bus. Storing skirting in it made it no less a bus. Neither of these actions had anything to do with affixing the vehicle to the ground. We, as was

the trial judge, are left to speculate whether the school bus was in operating condition, licensed or otherwise capable of use as a school bus in the normal sense of that term. In strictly construing the statute against the state and applying it to the facts of this case, we cannot say that the school bus falls clearly within the language of Code § 18.2-90 and specifically the language "storehouse" or "warehouse." Accordingly, we hold that the Commonwealth failed to prove an essential fact as charged in the indictment and required by the statute and we reverse the appellants' convictions of statutory burglary. Having reversed the burglary convictions for the aforesaid reasons, we need not address the sufficiency of the evidence to support the burglary charges.

## II. The Sufficiency of the Evidence Issue.

Upon familiar principles, we consider the evidence in the light most favorable to the Commonwealth giving it all inferences fairly deducible therefrom. A conviction will be affirmed unless it appears from the evidence that it is plainly wrong or without evidence to support it. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975); *Sutphin v. Commonwealth*, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).

While there was conflict in the evidence, the record contains sufficient credible evidence to support the grand larceny convictions beyond a reasonable doubt. The Commonwealth proved that skirting panels valued in excess of $200 were taken from Conner Mobile Homes between the close of business on February 8 and the discovery of the missing panels on February 9, 1985. These panels were removed from a locked storage unit after the security lock was broken. The panels were subsequently found on the Mitchells' property on February 9, 1985. The appellants attempted to sell these panels to the Mitchells for the purpose of attaching them to the Mitchells' mobile home. In attempting to sell these panels to the Mitchells, the appellants consciously asserted a possessory interest in them; consequently the larceny presumption based on exclusive possession of property recently stolen is applicable. *See Best v. Commonwealth*, 222 Va. 387, 389, 282 S.E.2d 16, 17 (1981). Furthermore, the evidence is sufficient to sustain the convictions independently of this presumption. *See id.* at 389-90, 282 S.E.2d at 18. Accordingly, we affirm the convic-

tions for grand larceny.

*Affirmed in part,
reversed in part.*

Cole, J., and Hodges, J., concurred.