**Richmond**

JEFFREY GLENN DALTON

v.

COMMONWEALTH OF VIRGINIA

No. 1994-90-2

Decided June 2, 1992

COUNSEL

John N. Clifford (Clifford & Duke, P.C., on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—In a jury trial, Jeffrey Glenn Dalton, appellant, was convicted of statutory burglary and attempted grand larceny. On appeal, Dalton contends that his conviction for statutory burglary should be reversed because the structure he is charged with breaking and entering is not a "storehouse" under Code §§ 18.2-90 and 18.2-91. We disagree and affirm his conviction for statutory burglary.

On the evening of August 11, 1990, the Chesterfield police responded to a silent alarm that was activated at the business of Chester Marine and Tractor Company (Chester Marine). Upon arrival, the police observed Dalton and another man on the property at Chester Marine. A pickup truck had been backed up to a structure that was used to store lawn mowers that had been serviced and were ready to be delivered. The police observed Dalton and his confederate removing lawn mowers from the structure and loading them onto the back of the pickup truck. After Dalton and the other individual observed the police, they fled from the area and a chase ensued. Both men were eventually apprehended.

The structure from which Dalton removed the lawn mowers consisted of a rectangular area enclosed on three sides by an eight foot chain link fence. The fourth side of the structure was the side of a building, and the fence was attached to the side of this build-

ing. The enclosed area was described as "a continuation of that building." The metal roof of the building extended from the back wall to cover the enclosed, rectangular area. This roof was supported by posts anchored in the ground by cement. The fence did not reach the roof, leaving a five to six foot gap between the top of the fence and the roof. One side of the fence had a gate that was closed but not locked on the night of August 11, 1990.

The entire property at Chester Marine was enclosed by a perimeter chain link fence. Wayne Bowles, general manager of Chester Marine, testified that this fence was secured on the evening of August 11, 1990. The police discovered a three-foot hole in the perimeter fence. Also, a chain used to lock the gate of the perimeter fence was cut.

The indictment charged Dalton with breaking and entering "the storehouse of Chester Marine and Tractor Company" with the intent to commit larceny or a felony therein in violation of Code § 18.2-91. Code § 18.2-91 defines burglary as the breaking and entering of any of the structures listed in Code § 18.2-90 with the intent to commit larceny or any felony except murder, rape or robbery. Code § 18.2-90 lists, in pertinent part, the structures subject to burglary: "any office, shop, storehouse, warehouse, banking house, or other house."

Dalton argues that the trial court erred in refusing to grant his Motion to Strike the Evidence and Motion to Set Aside the Verdict because the storage area was not a "storehouse" within the meaning of the burglary statute. He also asserts that the trial court erred in refusing to instruct the jury that a storehouse is a "structure, enclosed with walls from the ground to the roof, and permanently attached to the realty." These assignments of error require us to decide whether the structure Dalton was charged with breaking and entering is a "storehouse" within the meaning of Code § 18.2-90.

Whether or not the storage area at Chester Marine is a "storehouse" is a factual question, and the trial court's determination will not be reversed if it is supported by the evidence. *See Crews v. Commonwealth*, 3 Va. App. 531, 536, 352 S.E.2d 1, 4, *appeal refused*, 360 S.E.2d 715 (1987). Dalton contends that the structure cannot be the subject of burglary because it is merely a fenced-in area that is neither affixed to the realty nor enclosed

with walls and a roof. The Commonwealth contends that the structure is a "storehouse" because it is permanently affixed to the ground and to the adjacent building so as to become a part of the realty.

█ We begin our analysis by recognizing that the statute in question does not define the term "storehouse." The word "storehouse," in plain terms, means a "structure in which things are stored." *Black's Law Dictionary* 1420 (6th ed. 1990). Although the parties agree that the structure in question was used for the storage of lawn mowers, this fact does not end our analysis. The pertinent language in Code § 18.2-90 has been interpreted in several cases, and we turn to these cases for guidance.

In *Compton v. Commonwealth*, 190 Va. 48, 54, 55 S.E.2d 446, 449 (1949), the Supreme Court held that a chicken house fell within the definition of "other house" under the burglary statute. In reaching this conclusion, the Court noted that the chicken house, although a small building, was tall enough to stand up in and had walls and a roof. *Id.* at 54, 55 S.E.2d at 449. Consequently, the Court held that this particular chicken house could be the subject of burglary.

In a later case, *Graybeal v. Commonwealth*, 228 Va. 736, 324 S.E.2d 698 (1985), the Court addressed the question of whether mobile homes or trailers, used for resale or display, came within the language of "other house" under Code § 18.2-90. In construing the meaning of "other house," the Court found that the structures listed in the statute share the common element of being permanently affixed to the ground and, thus, constitute "realty." *Id.* at 740, 324 S.E.2d at 700. Because the trailers were not affixed to the ground, the Court held that they were not included within the definition of "other house."

Finally, in *Crews v. Commonwealth*, 3 Va. App. 531, 352 S.E.2d 1, *appeal refused*, 360 S.E.2d 715 (1987), we considered whether a converted school bus used solely for storage was a "storehouse," "warehouse" or "other house" under Code § 18.2-90. There, we stated that the controlling factor was whether the school bus was affixed to the ground so as to become part of the realty. *Id.* at 536, 352 S.E.2d at 3-4. Finding that a "school bus is not presumptively realty," we held that the Commonwealth was required to prove that it had been transformed into realty. *Crews*, 3 Va. App. at 536, 352 S.E.2d at 4. Although there was no dis-

pute that the school bus was used for storage, the evidence failed to show that the vehicle had been affixed to the ground. For this reason, we held that the converted school bus did not fall within the language of Code § 18.2-90. *Id.* at 537, 352 S.E.2d at 4.

■ From this review of the case law, it is clear that in order for a structure to be the subject of burglary, the structure must be permanently affixed to the ground so as to become a part of the realty at the time of the unlawful entry. *Graybeal*, 228 Va. at 740, 324 S.E.2d at 700; *Crews*, 3 Va. App. at 536, 352 S.E.2d at 3-4.[1] The evidence shows that the storage area at Chester Marine is a part of the realty. The roof, which extends from the Chester Marine building and covers the entire storage area, is supported by posts anchored into the ground by cement. Also, the fence is attached to the wall of the Chester Marine building. From this evidence, the trial court properly found that the structure was permanently affixed to the ground so as to become part of the realty.

■ However, determining whether or not a structure is permanently affixed to the ground is not the sole consideration in deciding whether a structure comes within the language of Code § 18.2-90. In addition to being affixed to the ground, a structure subject to burglary must also have walls and a roof. *See Compton*, 190 Va. at 54, 55 S.E.2d at 449. Dalton contends that the storage area at Chester Marine does not have walls, as required by *Compton*, because three sides consist of a chain link fence and the fence does not reach the roof.

A "wall" is defined as "[a]n erection of stone, brick, or other material, raised to some height, and intended for purposes of privacy, security or inclosure." *Black's Law Dictionary* 1581 (6th ed. 1990). The material used to form the side of a structure does not, standing alone, determine whether the side is a "wall." Rather, the composition of the wall is significant only insofar as it provides security, privacy or inclosure. Here, the eight-foot chain link fence, enclosing the storage area on three sides, provided some security against unwanted intruders. In the absence of an expressed

---

[1] Whether a structure is "permanently affixed to the ground" is necessarily a factual determination. We recognize that "permanently" is a condition that may vary from case to case. Thus, the focus in a particular case is on whether the structure is affixed to the ground so as to become a part of the realty at the time of the unlawful entry and not that the manner in which it is affixed to the ground will in fact be permanent.

legislative intent to the contrary, we decline to hold that a wall of a structure must be composed of a particular material in order for the structure to be the subject of burglary. Accordingly, the fact that three sides of this structure were composed of a chain link fence, rather than some other material, does not exclude the structure from classification as a "storehouse" under Code § 18.2-90.

Dalton also contends that the fence cannot be considered a wall because of the five- to six-foot gap between the top of the fence and the roof. In *People v. Brooks*, 133 Cal. App. 3d 200, 183 Cal. Rptr. 773 (1982), a California court considered whether a loading dock was a "building" under California's burglary statute even though there was a six- to twelve-inch gap between the top of the chain link fence walls and the roof. There, a loading dock at the rear of a market was enclosed on two sides by a chain link fence; the other two sides were made of concrete block and attached to the building in which the market was located. Although there was a gap of six to twelve inches between the top of the chain link fence and the roof, the court found that this did not make the fence "any the less a wall." *Id.* at 205, 183 Cal. Rptr. at 776. The court held that "the test should not be so much whether the walls touch the ceiling or roof but whether the walls act as a significant barrier to entrance without cutting or breaking." *Id.*

We find the reasoning of the California court persuasive. Although the fence and the roof do not connect, the eight-foot fence nonetheless serves as a significant barrier to trespassers.[2] The roof and walls, together, formed a structure intended to safeguard the goods stored inside and constituted a significant barrier to a trespasser intent upon removal of these goods. Thus, on the facts of this case, we find that the existence of a clearance between the top of the fence and the roof does not make the chain link fence any the less a wall. *See id.*

In summary, we hold that the structure in the case was permanently affixed to the ground so as to become a part of the realty,

---

[2] The fact that the gate to the storage area was closed but not locked is of no consequence to our analysis. A breaking, for purposes of burglary, requires the application of force, however slight, to accomplish an entrance against the occupier's will. *Johns v. Commonwealth*, 10 Va. App. 283, 286, 392 S.E.2d 487, 488 (1990) (citing *Davis v. Commonwealth*, 132 Va. 521, 523, 110 S.E. 356, 357 (1922)). Therefore, merely lifting the latch or opening the gate, where it is contrary to the will of the occupier, is sufficient proof of breaking to support a conviction for burglary. *See id.*

was intended for secure storage, had a roof and walls that acted as a significant barrier to a trespasser, and, thus, was a "storehouse" as contemplated by Code § 18.2-90.

■ Finally, we consider Dalton's contention that the trial court erred in rejecting Jury Instruction No. A. That instruction reads: "An office, shop, storehouse, wharehouse [sic] or other house, as used in these instructions, is a structure, enclosed with walls from the ground to the roof, and permanently attached to the realty." On appeal, our review is limited to determining whether the jury was fully and fairly instructed concerning the law.

> A reviewing court's responsibility in reviewing jury instructions is "to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." It is elementary that a jury must be informed as to the essential elements of the offense; a correct statement of the law is one of the " 'essentials of a fair trial.' "

*Darnell v. Commonwealth*, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (citations omitted). As discussed, although the definition of "storehouse" contemplates a structure with walls and a roof, it does not require that the walls and the roof connect. Because the proposed jury instruction incorrectly stated the law, we find no error in the trial court's refusal to grant it.

For these reasons, we find that the trial court's determination that this structure falls within the statutory definition of "storehouse" is supported by the evidence. Consequently, Dalton's conviction for statutory burglary is affirmed.

*Affirmed.*

Bray, J., and Elder, J., concurred.