COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Benton and Overton
Argued at Norfolk, Virginia


CHARLES ROSSER
                                          OPINION
v.        Record No. 0422-95-2    BY JUDGE JOSEPH E. BAKER
                                      MARCH 11, 1997
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
                   W. Park Lemmond, Jr., Judge

         Connie Louise Edwards for appellant.

         John H. McLees, Jr., Assistant Attorney
         General (James S. Gilmore, III, Attorney
         General, on brief), for appellee.


     Charles Rosser (appellant) appeals from the judgment of the

Circuit Court of Greensville County (trial court) that approved

his jury trial conviction for knowingly and willfully inflicting

bodily injury on an employee of a correctional facility while a

prisoner therein in violation of Code § 18.2-55.  Appellant

contends that the trial court erroneously (1) overruled his

motion to strike the evidence as insufficient to support the

charge, (2) overruled his motion for a mistrial made after the

prosecutor in his closing argument in the sentencing phase of the

trial referred to appellant as an "animal," and (3) refused to

order the production of a general log, the initial report of the

investigation of the incident, and the operating procedures

manuals for the Departmental Operational Policy and Institutional

Operational Policy.  For the reasons hereinafter stated, we

reverse and remand this case to the trial court.

Upon familiar principles, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). While in a correctional facility, appellant was convicted of stabbing a prison guard. Prior to trial, appellant filed a motion for disclosure of exculpatory evidence and for discovery under Rule 3A:11. Appellant sought access to (1) a general log book, (2) an initial incident report of the stabbing, and (3) manuals setting forth the operating procedures of the institution and the Department of Corrections. The trial court refused to order the Commonwealth to produce these materials and further advised appellant that they could not be obtained by subpoena.

Appellant also moved to appear in court unrestrained before the jury. Defense counsel argued that the shackling of appellant was too prejudicial considering the nature of the charge against him. In a pretrial hearing, an investigator from the correctional facility testified that appellant had a potential for violent behavior in court. He further testified that appellant and his brother, Richard Rosser (Richard), had violent histories as reflected by their institutional records. The trial court denied appellant's motion and admonished the jury at the beginning of trial that the shackling was not indicative of anything but court procedure.

The stabbing occurred on the prison grounds but outside one

of the prison buildings.  The victim, Sergeant Walker (Walker), testified that on the day of the stabbing he had been assigned to work in the Visitor Room and received a coded call which meant that correctional officers should immediately render emergency assistance.  In response, he hurried toward the building where the disturbance had been reported.  He approached the building and went through an open area where several inmates were present.  As he did so, he saw appellant emerge from one end of the building and Richard emerge from the other end.  He saw Richard running toward him with a weapon in his hand.  Walker did not face Richard directly because he was trying to watch the other inmates behind him for fear of an attack from the rear.  While Walker fended off Richard's attempts to stab him from his right side, he saw appellant out of the corner of his eye approach from his left and strike him in his back.  Walker did not know immediately that he was injured because of the "chaos out there on the yard," his efforts to get back to safety in the building from which he had come, and the rapidity of the assault.  He soon discovered that appellant had inflicted a stab wound which required fifteen stitches at the local hospital.

Walker admitted that he first named Richard as his assailant; however, at trial, he testified that he knew appellant and Richard only by their last name and mistakenly assigned the wrong first name to appellant.  He testified that he learned he had used the wrong name "[w]hen the investigator came to [him]

and told [him] which one had stabbed [him] and we was going to court, and said, that's not the right one." At trial, he positively identified appellant as his assailant.

Officer Darryl Turner (Turner) testified that he witnessed the entire incident during daylight hours, from fifteen to twenty feet away. He stated that he saw Walker running from the B-4 building to the B-2 building, and that he observed appellant and Richard come out of the B-2 building. Both appellant and Richard were armed with "shanks" or homemade knives. Turner stated that Richard was in front of Walker and appellant "came from behind and stabbed [Walker] in the back." The Commonwealth then rested. Appellant's motion to strike was denied.

Richard testified that he, not appellant, had stabbed Walker. He admitted that he had been convicted of malicious wounding, murder, and use of a firearm in the commission of each of those felonies. He testified that if he were convicted of the present offense, his parole date would be affected.

At the conclusion of all the evidence, the defense again moved to strike, claiming that the victim's initial identification of Richard as the assailant and Richard's admission of guilt established that the Commonwealth's evidence was insufficient as a matter of law. The court again overruled appellant's motion.

The guilt and penalty issues of the trial were bifurcated. After the parties presented arguments on the issue of guilt, the

jury found appellant guilty as charged. Thereafter, the parties presented arguments concerning the appropriate sentence to be imposed. As appellant sat shackled in plain view of the jury, the prosecutor told the jury, "I don't think I'm overstating this when I say [appellant] is an animal. And, I say that in every sense of the word . . . ." Appellant objected to the prosecutor's statement and, at his request, the jury was excluded. The trial court agreed that the statements were inappropriate and sustained appellant's objection; however, the trial court overruled appellant's motion for a mistrial. After requesting the jury to "disregard the argument," the trial court said, "So, if you would ignore that I would appreciate it. Thank you." The jury retired and returned its verdict recommending imposition of the ten-year maximum sentence provided by law.

## I. Sufficiency of Evidence

The testimony of Turner, who witnessed the entire incident, sufficiently supports the verdict. He testified that he observed appellant and Richard approach Walker and that appellant "came from behind and stabbed [Walker] in the back." That evidence is sufficient to support the trial court's judgment.

## II. Motion for Mistrial

Every person charged with a crime is entitled to have his or her case determined by the evidence produced at trial. Dingus v. Commonwealth, 153 Va. 846, 851, 149 S.E. 414, 415 (1929). In his closing argument before the jury, the Commonwealth's attorney

said:

> It's rare that I would ask for a specific
> sentence . . . .  However, I cannot ignore
> the vile and vicious nature of this offense
> . . . .  I don't think I'm overstating this
> when I say [appellant] is an animal.  And, I
> say that in every sense of the word, not
> ignoring that we're dealing with a human
> being here . . . .

Appellant argued his objection out of the presence of the jury, telling the trial court that the statement inferred that "we are human beings and that implies that [appellant] is not a human being but that he is an animal."  Appellant's objection was sustained but his motion for a mistrial was overruled.  When the jury returned to the courtroom, the trial court merely requested, but did not directly order, the jurors to disregard the improper argument in arriving at their conclusion.  The prosecutor, as the following quote demonstrates, was not "chastised" for making an inappropriate argument.  Instead, the trial court told the jury:

> Ladies and gentlemen, I'd ask that you
> disregard the argument with reference to the
> comparing of the defendant to an animal.  The
> reason is quite simple.  Argument has to be
> based upon evidence presented. Biologically,
> he's correct.  We're all from the animal
> kingdom, but there any [sic] many other
> connotations that one could give.  We've had
> no particular evidence on animal-like traits.
> Let's take the trait of the female or male
> neutered pet Collie in your home.  A
> reference to that pet or a reference to the
> gold fish as opposed to reference to a
> wolverine or a rattlesnake.  They're all
> animal kingdom but they're all different, and
> I think that maybe that's what society sees.
> I'm not chastising the Commonwealth for it.
> But, rather than use a term that has so many
> meanings, I've suggested that we won't use
> those terms.  So, if you would ignore that I

would appreciate it.  Thank you.

When the prosecutor resumed argument, he said:
        MR. OWEN:  Rather than referring to terms
        that may be inappropriate, let's talk about
        actions.  You saw the defendant and what he
        did.

Because the jury did not witness the assault, these statements

could only have been interpreted by the jury as a further

reference to the "animal" remark and as a call for them to view

appellant sitting shackled, within their sight, not unlike a wild

animal.  In cases such as this, where the trial judge orders an

accused shackled, great care must be taken to assure that the

accused is not deprived of a fair trial.
            One accused of crime is entitled to a
            scrupulously fair and impartial trial.
            Nothing should be done or permitted to
            prejudice his case, or to obscure in the
            minds of the jurors the question, whether the
            evidence justifies them in a conclusion that
            he is guilty of the offense charged.

Harrison v. Commonwealth, 183 Va. 394, 402, 32 S.E.2d 136, 140

(1944).  An accused is entitled to the same principle in the

sentencing part of a bifurcated trial.

In any prosecution of a person accused of committing a

crime, vile though it may be, the duty of the prosecutor extends

beyond vigorously presenting the Commonwealth's evidence and

commenting thereon; the prosecutor is required to see that the

accused is accorded a fair trial.  Id.  Conviction and punishment

should rest upon reason alone, and not upon appeals to emotion,

sympathy, passion, or prejudice.  In many cases, the effect of

improper argument cannot be overcome by direction to the jury to disregard it.  Id.  In this case, the statement to the jury was not a "direction to the jury" but a mere request.

The standard for prosecutorial conduct in presenting argument to the jury has been defined by former Chief Justice Prentis:

> If, after the testimony has been presented and in the performance of his public duty, he concludes therefrom that he should ask for a conviction, it is not only his right, but his duty, to sum up the evidence and, in argument, to give the jury his reasons based thereon for his conclusion that it justifies such conviction.

Dingus, 153 Va. at 853, 149 S.E. at 416.  Chief Justice Prentis continued by saying, "[t]he mental attitude of the attorney for the Commonwealth in this case, as indicated by [his] remarks, ignores these salutary doctrines."  Id.  Chief Justice Prentis' statement is equally applicable here.

> We have repeatedly said that it is the duty of the Commonwealth's Attorney to see that the accused is accorded a fair trial.  In doing so, he should refrain from observations or remarks that evince feeling and prejudice, or that are irrelevant and derogatory to the witness.  During his examination of witnesses, and in his argument, he should not resort to appeals to sympathy, passion or prejudice.

Jones v. Commonwealth, 196 Va. 10, 17, 82 S.E.2d 482, 486 (1954).  If reason alone cannot be relied upon, the verdict should be set aside.  See Taylor v. Commonwealth, 180 Va. 413, 23 S.E.2d 139 (1942); see also McReynolds v. Commonwealth, 177 Va. 933, 15

- 8 -

S.E.2d 70 (1941).

Where, as in the case before us, the prosecutor tells the jury that the accused, while sitting shackled in plain view, is in every sense of the word an "animal," and, after the trial court sustains appellant's objection to those remarks, the prosecutor further states that his remark "may be inappropriate" but reminds the jury, "You saw the defendant and what he did," the jury's attention was necessarily drawn to appellant's shackles. Based upon the record before us, we cannot say that this was not one final reminder to the jury that they should view appellant as a caged animal.

The prosecutor's inappropriate conduct deprived appellant of the "scrupulously fair and impartial trial" to which he was entitled. Harrison, 183 Va. at 402, 32 S.E.2d at 140. The trial court's request that the jury disregard the prosecutor's remarks lacked the direction that should be given when inappropriate argument is made. Even a clear direction to the jury was unlikely to have cured the inappropriate conduct of the prosecutor. Therefore, we reverse and remand this case for such further proceedings as the Commonwealth may be advised.

### III. Production of Records

Because a retrial on the merits may occur, we address the further issue of the records. After overruling appellant's motion made pursuant to the discovery rules, the trial court instructed appellant that the requested records could not be

obtained with a subpoena duces tecum.  We agree with the trial court's decision with respect only to the initial incident report; however, we disagree with the trial court's ruling regarding appellant's right, under Rule 3A:11(b)(2), to production of the general log and the operating procedures manuals.

We hold that the initial incident report is not discoverable pursuant to Rule 3A:11(b)(2), which states in relevant part: "This subparagraph does not authorize the discovery or inspection of . . . reports, memoranda, or other internal Commonwealth documents made by agents in connection with the investigation or prosecution of the case . . . ."  The initial incident report clearly falls within this portion of Rule 3A:11(b)(2); see Ramirez v. Commonwealth, 20 Va. App. 292, 296-97, 456 S.E.2d 531, 533 (1995).

However, the exclusionary portion of Rule 3A:11(b)(2) does not apply to the general log or the operating procedures manuals. These items were not made "in connection with the investigation or prosecution of the case . . . ."  Instead, these items are described in the first sentence of Rule 3A:11(b)(2):

> Upon written motion of the accused a court shall order the Commonwealth's attorney to permit the accused to inspect and copy or photograph designated books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, that are within the custody, or control of the Commonwealth, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable.

Appellant filed a written motion seeking discovery of the general log and the operating procedures manuals.  Appellant also proffered how these items "may be material to the preparation of his defense."

Upon retrial, if appellant requests discovery of the general log and the operating procedures manuals, such records as are in the possession of an agency of the Commonwealth must be produced subject to an <u>in</u> <u>camera</u> review by the trial court for relevance and for such redactment as is appropriate.

Accordingly, the case is reversed and remanded.

<u>Reversed and remanded.</u>