COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Beales, Decker and AtLee
Argued at Salem, Virginia

CHRISTOPHER EUGENE WILSON

v.        Record No. 0363-15-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE RANDOLPH A. BEALES
FEBRUARY 9, 2016

FROM THE CIRCUIT COURT OF FLOYD COUNTY
Marcus H. Long, Jr., Judge

Lindsay H. Honeycutt (The Honeycutt Law Office, PLLC, on brief),
for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Christopher Eugene Wilson (appellant) was convicted following a bench trial of

attempted arson in violation of Code §§ 18.2-79 and 18.2-26 and misdemeanor trespass in

violation of Code § 18.2-119.[1]  Appellant challenges his conviction for attempted arson by arguing

that "the evidence presented at trial was insufficient, as a matter of law, for the trial court to

establish that the structure involved in the case met the definition of any of the listed structures in

Va. Code Ann. § 18.2-79."  For the following reasons, we affirm the trial court.

I. BACKGROUND

We consider the evidence on appeal "in the light most favorable to the Commonwealth, as

we must since it was the prevailing party" in the trial court.  Beasley v. Commonwealth, 60

Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296,

330, 601 S.E.2d 555, 574 (2004)).  So viewed, the evidence at trial was that the Check Country

---

[1] Appellant's conviction for trespass is not at issue in this appeal.

Store in Floyd County is owned by Wayne Lamay. On May 28, 2014, appellant was involved in an incident at the store. As a result of that incident, Mr. Lamay told appellant, in "no uncertain terms," that he could no longer come back onto the premises of the store. The Check Country Store has a room for storing grain or feed and offers other goods for retail sale. The trial court found from the evidence that grain is stored in the feed room of the store.

On the morning of May 30, 2014, appellant's mother drove appellant to the Check Country Store. Upon arriving, appellant remained in the vehicle in the parking lot as his mother entered the store to purchase alcohol for him. Cassandra Kietzmann testified that she saw appellant get out of the vehicle and yell loudly. Ms. Kietzmann heard appellant yelling about not being allowed to be at the store and heard him threaten to fight a man in the parking lot. Next, she saw appellant walk back to his mother's vehicle and grab some type of book. Appellant began to rip up the pages of the book and light the pages on fire. Ms. Kietzmann then witnessed appellant stuff those pages of paper into the door handle of the Check Country Store. She testified that appellant tried to light those pages on fire with a lighter, but was unsuccessful because it was a "very windy day." When the pieces of paper did not light, Ms. Kietzmann heard appellant yell, "Go ahead, call the cops," followed by, "I'll kill you." After appellant and his mother left the premises, Ms. Kietzmann, who had been viewing this incident from across the street, pulled up to the store to pump gas. Before leaving, Ms. Kietzmann removed some wrinkled, burned paper from the door handle of the Check Country Store.

Tim Austin testified that he was at the Check Country Store on May 30, 2014, to install a door. Mr. Austin testified that appellant screamed at him that he would kill him. Mr. Austin witnessed appellant tearing pages out of a Bible and throwing them into the air. At this point, Mr. Austin went into the Check Country Store through the grain room door to check on his wife Cathy, who worked at the store. As he was walking towards his wife, Mr. Austin saw burning

- 2 -

papers swirling around – including some that had entered into the store through the open front door. Once inside the store, Mr. Austin's wife told him to "go back in the grain room and lock the door and stay back there," which Mr. Austin did.

Cathy Austin, the wife of Tim Austin, testified that appellant's mother remained in the store for "five or ten minutes." While appellant's mother was in the store, Mrs. Austin could see appellant "pacing" and hear him "hollering" outside. Mrs. Austin witnessed appellant's mother purchase an alcoholic drink from the Check Country Store before she left with appellant. After appellant and his mother had left, Mrs. Austin "collected a bunch of [the] papers," noticed that "some of them were burned," and "put them in a plastic bag in case the police wanted them." Both Mr. and Mrs. Austin testified that the Check Country Store has a room for grain or feed and that Mr. Austin locked himself inside the grain room during the incident involving appellant.

Appellant testified that the papers he placed in the door handle of the Check Country Store were pages from a Bible he had burned at his home – prior to his arrival at the store on May 30, 2014. Appellant denied having a lighter with him on that day and said he had no intent to burn the store. He testified that he was expressing his feelings because he "was a little upset." Appellant acknowledged that he had previous convictions for felonies and for crimes of moral turpitude. The trial court rejected appellant's testimony as "not credible" and found him guilty of both charges.

## II. ANALYSIS

### A. Standard of Review

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)) (emphasis in original). "Viewing the

evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)) (emphasis in original). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. However, to the extent that appellant's assignment of error presents a question of statutory interpretation, "[w]e review the trial court's statutory interpretations and legal conclusions *de novo*." Craig v. Craig, 59 Va. App. 527, 539, 721 S.E.2d 24, 29 (2012) (quoting Navas v. Navas, 43 Va. App. 484, 487, 599 S.E.2d 479, 480 (2004)).

## B. The Definition of "Storehouse"

Appellant was convicted of attempted arson under Code §§ 18.2-79 and 18.2-26. Code § 18.2-79 provides in pertinent part as follows:

> If any person maliciously burns . . . any meeting house, courthouse, townhouse, college, academy, schoolhouse, or other building erected for public use except an asylum, hotel, jail, prison or church or building owned or leased by a church that is immediately adjacent to a church, *or any banking house, warehouse, storehouse, manufactory, mill, or other house . . . not usually occupied by persons lodging therein at night*, at a time when any person is therein . . . he shall be guilty of a Class 3 felony.

(Emphasis added). Appellant argues that "the evidence presented at trial was insufficient, as a matter of law, for the trial court to establish that the structure involved in the case met the definition of any of the listed structures in Va. Code Ann. § 18.2-79." Specifically, he asserts

- 4 -

that the Check Country Store was not a "storehouse" and that the "more appropriate statute" for a prosecution of these alleged acts was Code § 18.2-80.[2]

In the present case, the primary issue before this Court is whether the Check Country Store is a storehouse for the purposes of Code § 18.2-79. In interpreting Code § 18.2-79, we first note that the term "storehouse" is not defined by statute. While no case in Virginia has defined "storehouse" specifically in the context of this arson statute, this Court has defined "storehouse" in burglary cases as a "structure in which things are stored." Dalton v. Commonwealth, 14 Va. App. 544, 547, 418 S.E.2d 563, 564 (1992) (citing Black's Law Dictionary 1420 (6th ed. 1990)). In Dalton, this Court held that the structure in question was a storehouse as contemplated by Code § 18.2-90 because it was "permanently affixed to the ground so as to become a part of the realty, was intended for secure storage, had a roof and walls that acted as a significant barrier to a trespasser." Id. at 549, 418 S.E.2d at 566.

It is important to note, however, that the issue before the Court in Dalton was not the same issue that is before us in this matter. The primary issue in Dalton was whether the area from which lawnmowers were removed in a burglary was a *structure* as contemplated by Code § 18.2-90. Id. at 545, 418 S.E.2d at 563. The structure in Dalton was "a rectangular area enclosed on three sides by an eight foot chain link fence," with a fourth side being the side of an adjacent building, and a metal roof that extended over the area from the same adjacent building. Id. at 545-46, 418 S.E.2d at 564. Thus, the Court's analysis focused on whether the enclosed area was a "structure" for the purposes of burglary because the facts were not disputed that the

---

[2] Code § 18.2-80 states, in pertinent part:

> If any person maliciously . . . burn any building, bridge, lock, dam or other structure, whether the property of himself or of another, at a time when any person is therein or thereon, the burning or destruction whereof is not punishable under any other section of this chapter, he shall be guilty of a Class 3 felony. . . .

enclosure in question was used for storage. The present case presents the opposite issue, as neither party disputes that the Check Country Store is a "structure." To address appellant's assigned error, this Court must determine whether the Check Country Store was a structure "used for storage." Thus, this case presents a new definitional inquiry and requires the Court to define "storehouse" in a manner that makes clear what uses are consistent with that definition.

This Court will "interpret statutory language, whenever possible, to avoid rendering other statutory language superfluous." Epps v. Commonwealth, 59 Va. App. 71, 80, 717 S.E.2d 151, 155 (2011) (citing Cook v. Commonwealth, 268 Va. 111, 114, 597 S.E.2d 84, 86 (2004); Zhou v. Zhou, 38 Va. App. 126, 136, 562 S.E.2d 336, 340 (2002) (basic canons of statutory construction proscribe interpreting statutory language in a way that renders other statutory language superfluous)). Instead, this Court "presume[s] that the legislature chose, with care, the words it use[d]" when it enacts a statute. Rives v. Commonwealth, 284 Va. 1, 3, 726 S.E.2d 248, 250 (2012) (quoting Zinone v. Lee's Crossing Homeowners Ass'n, 282 Va. 330, 337, 714 S.E.2d 922, 925 (2011)). Relying on these canons of statutory construction, this Court must first determine if it is possible to define both "storehouse" and "warehouse" in a manner to avoid rendering either term superfluous. A "storehouse" is defined in the dictionary as "a building for storing goods (as provisions)." Webster's Third New International Dictionary 2252 (1981). Similarly, the word "warehouse" is commonly defined as "a building used to store goods and other items." Warehouse, Black's Law Dictionary (8th ed. 2004). Another commonly accepted definition of warehouse is "a place for the storing of surplus or reserve stocks and merchandise by a retail store." Webster's, supra, at 2576.

A review of cases from other jurisdictions reveals a broad range of definitions for the word "storehouse." The Supreme Court of Alabama has held that a storehouse is "a house in which things are stored; a building for the storing of grain, food-stuffs, or goods of any kind, a

- 6 -

magazine, a repository, a warehouse, a store." Jefferson v. State, 14 So. 627 (Ala. 1893) (conviction improper for larceny from a "store-house" where the building in which the larceny was committed contained no goods, wares, merchandise or grain for use, sale or deposit). The Court of Appeals of Kentucky has held that a "retail liquor house, in which a saloon is conducted, is a store house, within the meaning of Section 1164 of the Kentucky Statutes." Drury v. Commonwealth, 172 S.W. 94, 96 (Ky. 1915); but see Harlan v. State, 33 N.E. 1102 (Ind. 1893) ("the definitions given by lexicographers of the words 'storehouse' and 'warehouse' do not, in their terms, include 'saloon buildings'"). The Court of Appeals of Maryland has concluded that a movie theater equipped with storage cabinets for popcorn and a refrigerator for ice cream was a "storehouse" under the burglary statute. Hackley v. State, 207 A.2d 475 (Md. 1965). Some jurisdictions have defined a "storehouse" as synonymous with the term "warehouse." See State v. Sprague, 50 S.W. 901, 903 (Mo. 1899). Other jurisdictions have held that all warehouses are storehouses, but that a storehouse "is a wider term than warehouse, and includes a storage for family as well as for business purposes." Metz v. State, 65 N.W. 190, 191 (Neb. 1895).

Looking at the plain meaning of the word "storehouse" and the cases from other jurisdictions that have defined that term, we are persuaded that the legislature intended the word "storehouse" to cover a broad class of storage structures, including both retail stores that sell goods and merchandise and structures used for the storage of provisions, such as grain or feed. By defining storehouse in this manner, we seek to give effect to every word of the statute and to avoid any such construction that would render the term "warehouse" superfluous. The plain meanings of these terms suggest that a "warehouse" is a *specific* type of storage structure used in a commercial setting to hold excess goods prior to retail sale at some other location. A storehouse, on the other hand, is a *general* type of structure for storing goods for a number of

purposes. Therefore, we hold that a "storehouse" is a class of storage structures that includes both retail stores[3] and structures used for the storage of provisions and goods.

## C. The Check Country Store is a "Storehouse"

Having defined the term "storehouse," this Court must now determine whether there is sufficient evidence in the record to prove that the Check Country Store is a storehouse. This Court has previously determined that the issue of whether a particular structure is a "storehouse" is a factual question, and the trial court's determination will not be reversed if it is supported by credible evidence. Dalton, 14 Va. App. at 547, 418 S.E.2d at 564 (citing Crews v. Commonwealth, 3 Va. App. 531, 536, 352 S.E.2d 1, 4 (1987)). Viewing the evidence in the light most favorable to the Commonwealth, as we must since the Commonwealth prevailed below, the question before the Court is whether *any* rational trier of fact could have concluded that the Check Country Store was a "storehouse" for the purposes of Code § 18.2-79.

We find that there is sufficient evidence in the record to support the trial court's conclusion that the Check Country Store is a storehouse. The Check Country Store has a room where grain or feed is stored. The trial court could infer from the evidence that the goods sold at the store are also "stored" there until purchased by customers. Based on this evidence, we conclude that a rational trier of fact certainly could have found that the Check Country Store was a "storehouse" for the purposes of Code § 18.2-79.

Appellant maintains that the Check Country Store is merely a store and urges this Court to define "storehouse" as "a building for storing goods (as provisions)." See Merriam-Webster's

---

[3] Our conclusion that the definition of a "storehouse" is broad enough to include a retail store defines the term in a manner that is consistent with other similar words in Code § 18.2-79. For example, a "school house" is a building that contains a school. Likewise, a "banking house" is a building that contains a bank and a "courthouse" is a building that contains a court or courts. See, e.g., Cuccinelli v. Rector & Visitors of the Univ. of Virginia, 283 Va. 420, 432, 722 S.E.2d 626, 633 (2012) (noting the statutory principle that "a word is known by the company it keeps").

Collegiate Dictionary 1230 (11th ed. 2012). Even if this Court were to agree with appellant that a traditional retail store is not a "storehouse" under Code § 18.2-79, the trial court made a finding of fact below that grain was stored at the Check Country Store and relied on that evidentiary finding to conclude that this particular store was a "storehouse." Such a factual finding is entitled to deference and will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. Dalton, 14 Va. App. at 547, 418 S.E.2d at 564.

We conclude that the trial court's factual finding that grain was stored at the Check Country Store was supported by the evidence and thus was not plainly wrong. At trial, Mr. Austin testified that he witnessed appellant tearing up pages of the Bible just outside of the Check Country Store. Mr. Austin testified that appellant screamed at him, which made him nervous – and that he "went in through the feed room" of the store to check on his wife. Next, Mr. Austin testified that he "poked [his] head back out the grain room door" and saw burning papers both inside and outside of the store. At this point, he testified that his wife told him to "go back in the grain room and lock the door and stay back there." Mrs. Austin confirmed in her testimony that the Check Country Store has a "feed room" and that her husband "had come in from the feed room" at the time appellant was threatening individuals in the parking lot.

As the appellate court, we are required to "view the evidence in the light most favorable to the Commonwealth," as the party that prevailed at trial, "granting to it all reasonable inferences fairly deducible therefrom." Rosser v. Commonwealth, 24 Va. App. 308, 310, 482 S.E.2d 83, 84 (1997) (citing Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)). So viewing the evidence at trial, we find that the trial court acting as factfinder was permitted to draw the reasonable inference that feed or grain was stored within the Check Country Store. Because the testimony of the witnesses at trial and all reasonable inferences fairly deducible therefrom demonstrated that the Check Country Store stored grain or feed, we

hold that the trial court's finding of fact that the Check Country Store was a "storehouse" for the purposes of Code § 18.2-79[4] was supported by credible evidence. Therefore, we find that a rational trier of fact could have found that appellant was guilty beyond a reasonable doubt of attempted arson of a storehouse.

### III. CONCLUSION

In summary, we find that the trial court's factual finding that the Check Country Store was a storehouse for the purposes of Code § 18.2-79 was supported by the evidence at trial. Accordingly, we affirm appellant's conviction for attempted arson under Code §§ 18.2-79 and 18.2-26.

Affirmed and remanded.[5]

---

[4] Appellant argues that the "more appropriate" statute for prosecution of the offense would have been under Code § 18.2-80. However, it is settled law that "[a] prosecutor has the discretion to decide under which of several applicable statutes the charges shall be instituted." In re Horan, 271 Va. 258, 264, 634 S.E.2d 675, 679 (2006) (quoting Hensley v. City of Norfolk, 216 Va. 369, 373, 218 S.E.2d 735, 739 (1975)).

[5] We remand this case for the correction of a clerical error in the sentencing order, pursuant to Code § 8.01-428. While appellant was indicted for and convicted of attempted arson in violation of Code §§ 18.2-79 and 18.2-26 and the amended conviction order shows appellant was convicted under both code sections, the final sentencing order lists only Code § 18.2-26 as the applicable section of the Code for that offense.