COURT OF APPEALS OF VIRGINIA

Present: Judges Ortiz, Friedman and White
Argued at Christiansburg, Virginia

UNPUBLISHED

ANTHONY QUENTIN JOHNSON

v.      Record No. 1241-23-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
KIMBERLEY SLAYTON WHITE
JULY 23, 2024

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
J. Frederick Watson, Judge

Jason W. Todd Jr. (Petty, Livingston, Dawson & Richards, on brief),
for appellant.

Robert D. Bauer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of Campbell County convicted Anthony Quentin

Johnson of uttering a forged public record and unlawfully obtaining a document from the

Department of Motor Vehicles (DMV). The trial court sentenced Johnson to five years'

incarceration with all but one year suspended. On appeal, Johnson challenges the sufficiency of the

evidence to support his convictions. Finding no error, we affirm the trial court's judgment.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On May 24, 2022, Anthony Johnson went to a DMV in Lynchburg to file an application for a new certificate of title for a 2008 Dodge Charger. Vanita Turner, a DMV employee, waited on Johnson to assist him in his request for a new title. Johnson gave Turner a tattered and ripped title that was missing one of the two necessary owners' signatures to process Johnson's application for a new title; the signature missing was that for Jessica Carter. The "Assignment of Title by Owner" section of the certificate listed the seller's name as Craig Sanford Carter and recited that the vehicle had been sold to Anthony Johnson on May 11, 2022.

Turner explained to Johnson that he needed the other owner's signature on the title to proceed with his request. Johnson indicated that she was outside. Johnson left the DMV location and returned "not even five minutes" later with a signature in the missing space for Jessica Carter. Turner, after consulting with her manager, determined that the title was in such poor condition that the owners would have to obtain a replacement title before she could issue the requested title to Johnson. Turner then explained that the owners needed to come into the DMV location to obtain a replacement title. Johnson then left the DMV and two minutes later reentered the DMV location and presented a woman purporting to be Jessica Carter as one of the owners. Turner recognized the woman as a person with whom she had attended school and knew she was not Jessica Carter.

Turner asked the woman to verify that she was Jessica Carter. The woman provided a social security number and an address. Turner entered the information into the DMV records system and confirmed that the woman was not Jessica Carter. In fact, the information was for the person with whom Turner had gone to school. Johnson was present during the woman's conversation with Turner.

- 2 -

Turner again consulted her supervisor regarding the transaction, and it was reaffirmed that the application for a new title would be denied because the old title was in such poor condition and because they knew something was "not right." Turner told Johnson and the purported Jessica Carter that Turner could not process the certificate and that both owners needed to come to the office. Then she returned the title to Johnson. Johnson left the DMV at 4:07 pm.

At 4:51 p.m. the same day, Johnson arrived at the Altavista DMV office in Campbell County.[1] He presented the same title certificate, purportedly containing signatures of Craig Carter and Jessica Carter, and obtained a new title for the Charger in his own name.

DMV Special Agent Andy Hicks became involved in the incident on June 1, 2022, following a complaint from the Lynchburg DMV for suspicion of fraud or forgery on a certificate of title. During his investigation, Agent Hicks confirmed that the original owners on the certificate of title were Craig and Jessica Carter. Agent Hicks looked up Jessica Carter within the DMV database and located a sample of her signature and compared it with the signature on the certificate of title; it did not appear to be the same signature. When Agent Hicks interviewed Johnson, Johnson said that he bought the vehicle from Lock's Towing on Campbell Avenue in Lynchburg. Johnson said that when Lynchburg DMV told him that the second signature was needed on the title that he got Jessica's signature by driving to Lock's Towing and returning to the DMV. He stated that he eventually obtained a new title at the Altavista DMV on the same day. Despite actively searching Campbell Avenue, Agent Hicks could never find a physical location of Lock's Towing.

Johnson was charged with uttering a forged public record and unlawfully obtaining a document from the DMV. During the bench trial, Johnson moved to strike the evidence at the

---

[1] Campbell County is a jurisdiction adjacent to Lynchburg City.

conclusion of the Commonwealth's case in chief, arguing that the evidence failed to establish that the certificate of title was forged, or that he knew the signature was not Carter's. Johnson asserted that, because the Commonwealth failed to produce either Carter or the woman that accompanied him to the DMV, it did not overcome the reasonable hypothesis of innocence that Carter could have signed the title in the parking lot. Johnson also suggested that the Commonwealth improperly sought to ascribe the other woman's "misrepresentation[s]" as "his criminal conduct," because she may have misled him as well. Johnson maintained that the evidence supported his claim that he believed that he legitimately "had both signatures that [he] needed." He reasoned that, in the absence of both women, Hicks's testimony could not demonstrate that Johnson knew that Carter's signature was forged. Following the denial of the motion to strike, Johnson presented no evidence and renewed his motion.

The trial court found Johnson guilty of each charge and sentenced him to five years' incarceration with all but one year suspended. Johnson appeals, contending that the evidence failed to prove a fraudulent intent because the Commonwealth failed to exclude his reasonable hypothesis of innocence.

## ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting

*Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

## I. Uttering a Forged Public Record

In pertinent part, Code § 18.2-168 forbids "'any person [from] forg[ing] a public record . . . or [from] utter[ing], or attempt[ing] to employ as true, such forged record . . . knowing the same to be forged.' The code section prohibits two distinct offenses: forging a public record, and uttering, or attempting to employ as true, the forged record." *Goodwin v. Commonwealth*, 64 Va. App. 322, 326-27 (2015) (alterations in original) (footnote omitted) (quoting *Bennett v. Commonwealth*, 48 Va. App. 354, 357 (2006)). "Forgery is the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability." *Walker v. Commonwealth*, 25 Va. App. 50, 58 (1997). Uttering is defined as "an assertion by word or action that a writing known to be forged is good and valid." *Goodwin*, 64 Va. App. at 327 (quoting *Bateman v. Commonwealth*, 205 Va. 595, 600 (1964)). The assertion or declaration may be direct or indirect. *Bennett*, 48 Va. App. at 357.

"Because intent is a 'state of mind,' it 'may be proved by a person's conduct or by his statements.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (quoting *Barrett v. Commonwealth*, 210 Va. 153, 156 (1969)). "Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." *Sarka v. Commonwealth*, 73 Va. App. 56, 67 (2021) (quoting *Fleming v. Commonwealth*, 13 Va. App. 349, 353 (1991)). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable

doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). "In determining a defendant's intent, '[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Sarka*, 73 Va. App. at 67 (alteration in original) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)).

Johnson contends that the Commonwealth failed to establish that he knew that "the person who signed the [c]ertificate of [t]itle in the Lynchburg DMV was not Jessica Carter, but an imposter."[2] Johnson argues that the evidence cannot refute the reasonable hypothesis of innocence that he was "duped by a person claiming to be Jessica Carter," which would negate his intent to utter a forged document. We disagree.

"[M]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017) (second and third alterations in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). "By finding [a] defendant guilty, therefore, the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *Id.* (alteration in original) (quoting *Haskins*, 44 Va. App. at 9). "While a factfinder may not arbitrarily disregard a reasonable doubt, whether 'the hypothesis of innocence is reasonable is itself a "question of fact," subject to deferential appellate review.'" *Burton v. Commonwealth*, 58 Va. App. 274, 285-86 (2011) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 572 (2009) (en banc)).

---

[2] Johnson does not challenge the trial court's implicit finding that the document was forged and concedes that the document was a public record. Accordingly, we limit our review to the question of whether Johnson knew of the forgery.

Viewing the evidence in the light most favorable to the Commonwealth, it does not support Johnson's claims that he truly believed that the woman he presented at the DMV was Carter. To begin, Johnson initially attempted to title the car without the signature of the seller whom he claimed was present outside of the building. Later, Johnson witnessed Turner challenge both him and his companion on whether she was actually Carter. Tellingly, had Johnson actually believed that the woman at the DMV was Carter, he would have had no reason to lie when Hicks questioned him about the transaction. Had he been duped, as he claims, it logically follows that he would have responded with confusion, or would have stated that he brought Carter to the DMV with him that day. Instead, Johnson claimed that he left the Lynchburg DMV, drove back to Lock's Towing, obtained Carter's signature, and then returned to the DMV. But surveillance video showed that Johnson was absent from the Lynchburg DMV for only three minutes, the first time, and for two minutes, the second time. Further, Hicks was unable to find any proof of the physical location of Lock's Towing, despite driving the length of Campbell Avenue. Finally, after witnessing the interaction between Turner and the woman imposter and being denied his request, Johnson went to a different DMV in an adjoining jurisdiction with the same documentation.

"The Commonwealth need exclude only reasonable hypotheses of innocence that 'flow from the evidence itself, and not from the imagination' of the defendant." *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). Johnson's hypothesis of innocence does not "flow from the evidence itself." *Id.* In fact, "[a] defendant's false statements are probative to show he is trying to conceal his guilt, and thus [are] evidence of his guilt." *Taylor v. Commonwealth*, 61 Va. App. 13, 31 (2012) (quoting *Rollston v. Commonwealth*, 11 Va. App. 535, 548 (1991)).

To overturn a trial court's factual finding on appeal, we must find that "it is plainly wrong or without evidence to support it." *Wilson v. Commonwealth*, 66 Va. App. 9, 18 (2016). Reviewing

the evidence in the light most favorable to the Commonwealth, as we must, we cannot say that the trial court erred in rejecting his hypothesis of innocence.

## II. Unlawfully Obtaining DMV Documents

Code § 46.2-105.2(A) makes it "unlawful for any person to obtain a . . . certificate of title, or other document issued by the [DMV] if such person . . . is otherwise not legally entitled thereto." A person is not legally entitled to such documentation if they "obtain[] any document issued by the [DMV] through the use of counterfeit, forged, or altered documents." Code § 46.2-105.2(A).

Johnson challenges his convictions under Code § 46.2-105.2(A) for unlawfully obtaining DMV documents, and argues that, because he lacked the requisite fraudulent intent necessary for a conviction under Code § 18.2-168, it "cannot follow" that he obtained the DMV document "by fraud of forgery." We disagree. Possession of a forged instrument by a defendant naming him as owner of property "is prima facie evidence that he either forged the instrument or procured it to be forged." *Fitzgerald v. Commonwealth*, 227 Va. 171, 174 (1984). Here, because we have already found that the record supports the trial court's determination that Johnson uttered a forged public record, we find that the trial court was equally entitled to believe that Johnson obtained his vehicle title through a "counterfeit, forged, or altered document" and was thus not "legally entitled" to it.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*