COURT OF APPEALS OF VIRGINIA

Present:   Judges Chafin, Malveaux and Senior Judge Frank
Argued at Norfolk, Virginia

UNPUBLISHED

JAMIR JORDAN

v.        Record No. 1723-15-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE TERESA M. CHAFIN
NOVEMBER 22, 2016

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
L. Wayne Farmer, Judge

Julian Bouchard (J. Bouchard Law, P.C., on brief), for appellant.

Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Following a bench trial, Jamir Jordan ("appellant") was convicted of aggravated malicious

wounding in violation of Code § 18.2-51.2.  Appellant now appeals to this Court, contending that

(1) the evidence was insufficient to convict him of aggravated malicious wounding, and (2) the trial

court erred in applying the principal in the second degree theory of liability to his actions in order to

convict him of aggravated malicious wounding.

Background

On appellate review, we consider the evidence presented at trial in the light most

favorable to the Commonwealth, the prevailing party below, and "accord [it] the benefit of all

inferences fairly deducible from the evidence."  Riner v. Commonwealth, 268 Va. 296, 303, 601

S.E.2d 555, 558 (2004).  So viewed, the evidence proved that on May 15, 2014, Shawanda

Harrison ("Harrison") was at home with her daughters, Shakeria and Shaquita, as well as

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Shaquita's eight-month-old son. At around 4:00 p.m., City of Suffolk police officers came to Harrison's home to inform her that Shakeria, then seventeen years old, had been threatened at school. After receiving a phone call, Shakeria went outside at approximately 5:30 p.m. Harrison and Shaquita followed her. Once outside, Harrison observed a group of approximately thirty high-school-age teenagers coming toward her house.

Jaquay Collins, a member of the crowd, began to argue with Shakeria. During the course of the argument, Harrison and Shakeria were sprayed in the eyes with pepper spray by Collins and an individual named Kalani.

Jason Calamusa, a neighbor, saw the crowd "spitting on [his neighbors] and spraying . . . pepper spray." He ran toward Harrison's home and put himself between the crowd and the Harrisons, telling the crowd that they needed to leave his neighbor's property. When the group did not leave, Calamusa then said, "You can fight me. If you came to fight, you can fight me."[1] At this point, appellant punched Calamusa with a closed fist, causing Calamusa to fall to the ground. Calamusa curled into a fetal position as a group began to stomp, kick, and punch him. Once police sirens were heard, the beating stopped and the crowd dispersed.

Calamusa's mother took him to the emergency room. His blood pressure was extremely low, and he was transported to another hospital by ambulance. He was in the intensive care unit for five to seven days and spent another week in a regular hospital room recovering. He sustained a broken wisdom tooth during the beating. At the time of trial, Calamusa was still experiencing "really super sharp pains" that went "all through [his] body from [his] mouth." He also testified that he experiences hot and cold sensitivity, causing him to have to "eat everything on the other side of [his] mouth, [and] pack some kind of food in [his] tooth to eat."

---

[1] Calamusa did not possess any weapons and did not strike or hit anyone.

Harrison and Shakeria both testified that they clearly saw that appellant was the initial aggressor at Calamusa even though they had been sprayed with pepper spray. Both testified that appellant had a bushy ponytail and was not wearing a hat. Harrison and Shakeria both knew appellant because he had dated Shakeria the previous year.

Shaquita testified that although she was holding a fussy baby, she saw appellant take off his shirt before striking Calamusa in the face with a closed fist. She had not been sprayed with pepper spray.

Deborah Clay, Calamusa's mother, testified that although she did not see the initial punch, she identified appellant as one of approximately fifteen boys stomping, kicking, and hitting her son. Clay tried to pull the boys off her son, but injured herself in the process. She also testified that she scratched appellant's back as she tried to pull him off her son. When the crowd dispersed, she witnessed appellant "high-fiving" with a group of boys saying, "Hey, we beat the tattoo man's ass."[2]

Appellant called three witnesses – Demonte Lee-Smith, Jaquay Collins, and Antwon Roberts – who testified that they did not see who initiated the beating. They each testified that appellant did not initiate the beating and was trying to break up the fight. While Lee-Smith was not asked about appellant's appearance, Collins and Roberts were not able to recall any details concerning how appellant looked on the day of the incident.

Melba Osborne, appellant's mother, testified that her son always wore a hat. She also confirmed that appellant was not wearing a shirt when he came home after the incident.

Appellant testified that he had been mistaken for another individual, Samuel Lassiter, who also wore a bushy ponytail but no hat. He claimed that he never assaulted Calamusa and

---

[2] Appellant testified that Calamusa tattooed people in the neighborhood and, in fact, had tattooed appellant.

that he attempted to break up the fight. He did, however, admit that Clay scratched his back as he purportedly tried to stop the fight. Appellant denied ever "high-fiving" anyone or taking off his shirt.

Finding the Commonwealth's witnesses credible, the trial judge found that appellant initiated the beating and caused Calamusa to fall to the ground. The trial court further ruled that appellant "was acting in concert of action with the others who were standing around him." The trial judge went on to say that three Commonwealth witnesses observed that appellant was the initial aggressor and that Clay "saw him continue to be involved in the assault on [her] son." The trial court found appellant guilty of aggravated malicious wounding. This appeal followed.

Standard of Review

"Where the sufficiency of the evidence is challenged after conviction," this Court "will reverse a judgment of the circuit court only upon a showing that it is plainly wrong or without evidence to support it." Singleton v. Commonwealth, 278 Va. 542, 548, 685 S.E.2d 668, 671 (2009) (citation omitted); see also Code § 8.01-680. When reviewing the sufficiency of the evidence, this Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Rather, we "must . . . ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)).

When reviewing the sufficiency of the evidence, this Court is required to "consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial." Perry v. Commonwealth, 280 Va. 572, 578, 701 S.E.2d 431, 435 (2010) (quoting Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921,

- 4 -

924 (2000)).  This deferential standard "applies not only to the historical facts themselves, but the inferences from those facts as well."  Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*) (quoting Crowder, 41 Va. App. at 663 n.2, 588 S.E.2d at 387 n.2).  "Viewing the record through this evidentiary prism requires [this Court] to discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."  Smith v. Commonwealth, 56 Va. App. 711, 714, 697 S.E.2d 14, 15 (2010) (quoting Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009)).

Analysis

I. *Witness Credibility*

Appellant was convicted of aggravated malicious wounding.  Aggravated malicious wounding is defined in Code § 18.2-51.2(A):

> If any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment.

On appeal, appellant maintains that insufficient evidence was presented to the trial court to support his conviction.  Specifically, appellant contends that the trial court erred in finding that he initiated the beating of Calamusa.

Appellant first claims that the attacker was described as having a bushy ponytail and no hat.  While he admits to wearing a bushy ponytail, appellant argues that he was wearing a hat.  Appellant claimed that he had been mistaken for Samuel Lassiter, another individual who also wore a bushy ponytail but wore no hat.  He further contends that the Commonwealth's witnesses were distracted or injured, and therefore could not offer accurate testimony about the face of the initial attacker.

- 5 -

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder . . . ." Sandoval v. Commmonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Unlike "an appellate court which reviews only a cold record," Harris v. Woodrum, 3 Va. App. 428, 433, 350 S.E.2d 667, 670 (1986), the fact finder "has the opportunity to see and hear that evidence as it is presented," Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732; see also Bradley v. Commonwealth, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955) ("The living record contains many guideposts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them."). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

Appellant challenges Harrison and Shakeria's identification of him as the initial attacker because they had both been sprayed with pepper spray before the initial attack on Calamusa. However, both Harrison and Shakeria knew appellant before the date of the beating, and both witnesses testified that the pepper spray did not affect their ability to identify appellant as the initial attacker.

Appellant also challenges Shaquita's testimony because she was distracted by a fussy baby. Yet, Shaquita testified that she had no trouble seeing that appellant was the initial aggressor. Further, she also testified that appellant took off his shirt – a fact that was corroborated by appellant's mother.

"When the Commonwealth offers direct evidence from eyewitnesses whose testimony is not inherently incredible, the [factfinder] may accept that testimony as credible and reject all conflicting evidence, thereby determining in essence, that no reasonable hypotheses of innocence remain." Kelly v. Commonwealth, 42 Va. App. 347, 354-55, 592 S.E.2d 353, 357 (2004). From

the record on appeal, we conclude that the testimony of Harrison, Shakeria, and Shaquita, eyewitnesses to the events at issue, identifying appellant as the person who initiated the attack on Calamusa, was not inherently incredible as a matter of law. Accordingly, we hold that the trial court did not err in finding the evidence sufficient as a matter of law to support appellant's conviction of aggravated malicious wounding.

## II. *Principal in the Second Degree*

Appellant next contends that even if this Court accepts the trial court's finding that he initiated the beating of Calamusa, his conviction should be reversed because the trial court erred in applying the principal in the second degree theory of liability to his actions in order to convict him of aggravated malicious wounding.[3] Appellant argues that the trial court convicted him of aggravated malicious wounding without making factual determinations as to whether he continued to participate in the beating beyond the first punch or whether he attempted to break up the fight. Appellant further argues that the evidence was insufficient to support a finding that he acted in concert with the other attackers.

"A principal in the first degree is the actual perpetrator of the crime. A principal in the second degree, or an aider or abettor as he is sometimes termed, is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime." Muhammad v. Commonwealth, 269 Va. 451, 482, 619 S.E.2d 16, 33 (2005) (quoting Jones v. Commonwealth, 208 Va. 370, 372, 157 S.E.2d 907, 909 (1967)). As we have held on numerous occasions, a "principal in the second degree may be indicted, tried, convicted and punished as if a principal in the first degree." Allard v. Commonwealth, 24 Va. App. 57, 62, 480 S.E.2d 139, 141 (1997) (citing Code § 18.2-18). While the Commonwealth must prove that the offense was committed

---

[3] Although the trial court never stated that it made its decision based on the principal in the second degree theory of liability, for purposes of this opinion we will assume *arguendo* that appellant was found guilty of aggravated malicious wounding on that basis.

by the principal in the first degree in order to sustain a conviction of a principal in the second degree, see Sutton v. Commonwealth, 228 Va. 654, 665, 324 S.E.2d 665, 671 (1985), proof of "actual participation in the commission of the crime is not necessary" in order "to make a person a principal in the second degree," Muhammad, 269 Va. at 482, 619 S.E.2d at 33 (quoting Jones, 208 Va. at 372, 157 S.E.2d at 909).

To support a conviction under this theory, the Commonwealth need only prove that the accused was present at the scene of the crime and shared the criminal intent of the perpetrator or committed some act in furtherance of the offense. Allard, 24 Va. App. at 62, 480 S.E.2d at 141 (citing Rollston v. Commonwealth, 11 Va. App. 535, 540, 399 S.E.2d 823, 826 (1991)). Mere presence when a crime is committed is not sufficient to render one guilty as a principal in the second degree. Hall v. Commonwealth, 225 Va. 533, 536, 303 S.E.2d 903, 904 (1983). However,

> [w]hile mere presence at the scene of a crime or knowledge that a crime is going to be committed does not constitute aiding and abetting, accompanying a person with full knowledge that the person intends to commit a crime and doing nothing to discourage it bolsters the perpetrator's resolve, lends countenance to the perpetrator's criminal intentions, and thereby aids and abets the actual perpetrator in the commission of the crime.

Pugliese v. Commonwealth, 16 Va. App. 82, 94, 428 S.E.2d 16, 25 (1993); see Foster v. Commonwealth, 179 Va. 96, 99, 18 S.E.2d 314, 315-16 (1942) ("Every person who is present at the commission of a [crime], encouraging or inciting the same by words, gestures, looks or signs, or who in any way, or by any means, countenances or approves the same is, in law, assumed to be an aider and abettor . . . ."). Whether a person aided or abetted another in the commission of a crime is a question that may be determined by circumstantial as well as by direct evidence. Foster, 179 Va. at 99, 18 S.E.2d at 316 ("The status of the accused may be established both by circumstantial evidence and by direct evidence.").

In this case, a reasonable factfinder could conclude from the evidence presented that appellant aided and abetted in the commission of the charged offense. The evidence shows that appellant continued to participate in the beating beyond the initial punch. Shakeria testified that when Calamusa fell to the ground, appellant "continued punching him." Clay stated that appellant was one of the individuals on top of Calamusa during the beating. This fact was supported by appellant's own testimony that Clay scratched his back when trying to stop the beating. Clay also testified that appellant was one of the individuals "high-fiving" each other following the beating. This evidence was sufficient to support the trial court's finding that appellant was present during the malicious wounding of Calamusa and performed an overt act of assistance or encouragement by striking the initial punch against Calamusa. See Johnson v. Commonwealth, 58 Va. App. 303, 319, 709 S.E.2d 175, 183 (2011). Therefore, the evidence was sufficient to sustain appellant's conviction for aggravated malicious wounding as a principal in the second degree.

Appellant lastly contends that even if he initiated the beating, he showed a "conscientious effort to withdraw from the negative acts of the group" and that such withdrawal should negate any notion of concert of action and the principal in the second degree theory of liability should not apply.

Concert of action is a "species of accomplice liability, carrying with it the principle that the punishment imposed on each accomplice may be the same." Davis v. Commonwealth, 36 Va. App. 291, 295-96, 549 S.E.2d 631, 633 (2001). Code § 18.2-18 provides that "every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree."

> [P]roof that a person is present at the commission of a crime
> without disapproving or opposing it, is evidence from which, in
> connection with other circumstances, it is competent for the jury to

> infer that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same.

Foster, 179 Va. at 100, 18 S.E.2d at 316.

The Supreme Court applied the concert of action principle to the actions of co-defendants involved in the beating of two victims in Spradlin v. Commonwealth, 195 Va. 523, 79 S.E.2d 443 (1954). A group of four to five aggressors, including the defendants, forced the victims out of a restaurant. Id. at 528, 79 S.E.2d at 446. Once outside the restaurant, the aggressors split into two groups and proceeded to beat the victims. Id. The defendants, as in the current case, argued that their convictions should be overturned because there was insufficient evidence that they each individually aided and abetted in the assault and battery of the victims. Id. at 526, 79 S.E.2d at 444-45. The Supreme Court held that it was "immaterial whether [the defendants] actually inflicted the specific injuries received by [the victims]" as they were "present and associated in this concerted action and participated in bringing it about." Id. at 528-29, 79 S.E.2d at 446. Explaining further, the Supreme Court stated that

> [i]f there is concert of action with the resulting crime one of its incidental probable consequences, then whether such crime was originally contemplated or not, all who participate in any way in bringing it about are equally answerable and bound by the acts of every other person connected with the consummation of such resulting crime.

Id. at 528, 79 S.E.2d at 445.

In Johnson v. Commonwealth, 58 Va. App. 303, 709 S.E.2d 175 (2011), this Court came to a similar conclusion to the one reached in Spradlin. The defendant, acting with a group of fifteen to twenty men, confronted the victim at a restaurant. When the victim left the restaurant, the defendant attacked him and a group of four or five of the men proceeded to beat the victim. Id. at 309, 709 S.E.2d at 178. This Court held that "the evidence was sufficient to support the trial court's finding that [the defendant] was present during the malicious wounding of [the

victim] and performed an overt act of assistance or encouragement by striking the initial blow against the victim." Id. at 319, 709 S.E.2d at 183. Thus, this Court held that the evidence was sufficient to show that the defendant, at a minimum, acted as a principal in the second degree in the malicious wounding of the victim. Id.

Like in Spradlin and Johnson, the trial court could reasonably infer that appellant acted in concert with the other attackers because he initiated the beating. Appellant asserts that the initial punch in Johnson is distinguishable from the initial punch in this case because Calamusa challenged the crowd by stating, "You can fight me," whereas Johnson involved an ambush. However, Calamusa did not challenge appellant alone; he challenged the entire crowd. By striking the initial punch, appellant performed an "overt act" that encouraged or incited the others in the group to attack Calamusa. Rollston, 11 Va. App. at 539, 399 S.E.2d at 825. Appellant was also seen "high-fiving" with the group after the beating, further evincing his intent to aid and abet in the beating.

Appellant further contends that he tried to break up the fight, therefore negating any concert of action. The weight given to such testimony rested with the trial court which could reasonably conclude from all the facts and circumstances that appellant acted in concert with the group who continued the beating. Therefore, the evidence was sufficient to sustain appellant's conviction for aggravated malicious wounding in violation of Code § 18.2-51.2.

### Conclusion

For the above-stated reasons, the evidence was sufficient to prove beyond a reasonable doubt that appellant was guilty of aggravated malicious wounding. Further, the evidence was sufficient to prove that appellant acted as a principal in the second degree in the aggravated malicious wounding of Jason Calamusa.

Affirmed.