COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Moon, Judges Fitzpatrick and Annunziata
Argued at Charlottesville, Virginia


JAMES VIRGIL ALLARD
                                             OPINION BY
v.   Record No. 2846-95-3         JUDGE ROSEMARIE ANNUNZIATA
                                          JANUARY 28, 1997
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF AMHERST COUNTY
                    J. Michael Gamble, Judge

          Stephen R. Eubank (J. Thompson Shrader;
          J. Thompson Shrader & Associates, on brief),
          for appellant.

          John K. Byrum, Jr., Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     Following a jury trial, appellant, James Virgil Allard, was

convicted of statutory burglary in violation of Code § 18.2-91.

Pursuant to the jury's recommendation, the trial court sentenced

appellant to ten years incarceration.  The court further

sentenced appellant to an additional one-year term, which it

suspended, conditioned upon appellant's successful completion of

a period of post-release supervision.  Appellant contends (1) the

court erred in denying his motion to strike; (2) the court

improperly instructed the jury; and (3) the court abused its

discretion in imposing a greater sentence than the jury

recommended.  Finding no error, we affirm.

                       I. MOTION TO STRIKE

     Appellant argues that the trial court erred in denying his

motion to strike because: (1) the evidence was insufficient to

support his conviction; (2) the Commonwealth failed to prove that the structure he was charged with burglarizing was habitable; and (3) the structure he was charged with burglarizing could not be the subject of a burglary within the meaning of the statute. We disagree with each of these contentions.

On April 20, 1995 at 9:44 p.m., Sergeant John Dixon of the Amherst County Sheriff's Department was dispatched to the area of Pleasant Valley Elementary School (the school) to investigate a possible break-in in progress. Harold Thomas Lloyd, a local resident, had seen three men exit a car and proceed into the bushes nearby. Lloyd was concerned that the men intended to break into a neighbor's house, so he asked his brother to call the police. From his vehicle, Lloyd followed the car as it circled the area until Dixon arrived. Lloyd was unable to identify any of the men or the occupants of the car.

Upon his arrival, Dixon identified the car Lloyd had been following as matching the dispatcher's description of the suspect car. Dixon stopped the car and found two women inside. Meanwhile, another officer arrived at the school and discovered that a window to a classroom in the rear of the building had been broken. Hearing the report of the apparent break-in over his radio, Dixon detained the women.

Dixon summoned a tracking dog and phoned the school's principal, Ronald Compton. Compton arrived at the scene and informed Dixon that he had seen two men walking in front of the

school.  Dixon left the school area and observed two men, appellant and Eddie Foster, walking from the direction of the school.  Dixon placed the two men in custody.

At that time, E.W. Viar, a canine handler for the Lynchburg Sheriff's Office, arrived with a tracking dog.  Dixon instructed Viar to take the dog to the school and see if the dog could track the two men from the school area.  Within fifteen minutes, the dog led Viar back to the suspects and indicated that one or both of the men had made their way to that point from the school. Viar could not determine whether the dog had tracked one of the men or both, and, if the dog had tracked one of the men, Viar could not determine which, without allowing the dog to bite the one it had tracked.  Viar decided that allowing the dog to bite the men was not a good idea.

Four days after the break-in, Compton reported that a VCR was missing from the classroom.  The following day, Dixon found the VCR in the bushes approximately seventy-five yards from the point at which he had detained appellant and Foster.

James Roberts was also charged with breaking into the school.  Roberts, a convicted felon, testified on behalf of the Commonwealth as part of a plea bargain by which Roberts would receive a three-year suspended sentence and a fine.  Roberts testified that he, appellant, Foster, and the two women were riding in the car when Foster suggested "going into a school." Roberts, appellant and Foster exited the car, walked through a

field and arrived at the back of the school, approximately 100 yards from the car. Foster then stated that he was "going to get him a couple of VCRs." Foster broke the window and entered the school. While Foster was in the school, a car approached and Roberts yelled, "Here comes a car." Appellant then stated either, "Here comes a car" or "There go [sic] a car." Foster then jumped out of the window, and the three men ran. Roberts did not see Foster carrying a VCR as he exited the school.

## A. SUFFICIENCY OF EVIDENCE

In the case of a felony, every principal in the second degree may be indicted, tried, convicted and punished as if a principal in the first degree. See Code § 18.2-18. To convict based on this theory, the Commonwealth must prove the defendant was present at the scene and "'share[d] the criminal intent of the party who actually committed the [crime] or [was] guilty of some overt act in furtherance thereof.'" Rollston v. Commonwealth, 11 Va. App. 535, 540, 399 S.E.2d 823, 826 (1991) (quoting Augustine v. Commonwealth, 226 Va. 120, 124, 306 S.E.2d 886, 888-89 (1983)). A defendant may be convicted as a principal in the second degree if he or she is present, "'keeping watch or guard at some convenient distance.'" Id. at 539, 399 S.E.2d at 825 (quoting Brown v. Commonwealth, 130 Va. 733, 736, 107 S.E. 809, 810 (1921)). "'[P]roof that a person is present at the commission of a crime without disapproving or opposing it, is evidence from which, in connection with other circumstances,

. . . the jury may infer that he assented thereto . . . .'" Pugliese v. Commonwealth, 16 Va. App. 82, 93-94, 428 S.E.2d 16, 25 (1993) (quoting Foster v. Commonwealth, 179 Va. 96, 99-100, 18 S.E.2d 314, 316 (1942)).

On appeal, we consider the evidence and all inferences fairly deducible therefrom in the light most favorable to the Commonwealth. E.g., Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991). Doing so, we find Roberts' testimony alone sufficient to support appellant's conviction as a principal in the second degree to the statutory burglary. See Yates v. Commonwealth, 4 Va. App. 140, 143, 355 S.E.2d 14, 15 (1987) (quoting Johnson v. Commonwealth, 224 Va. 525, 527, 298 S.E.2d 99, 101 (1982)) ("'[a]n accused may be convicted upon the uncorroborated testimony of an accomplice'").

Roberts testified that appellant was present when Foster suggested they break into a school. Upon arriving at the school, appellant exited the car with Foster and Roberts and accompanied them to the back of the school. Upon reaching the back of the school, Foster declared that he was going to "get him some VCRs." As Foster broke the window and entered the school, appellant stood by and did not disapprove. Appellant waited while Foster was inside and, along with Roberts, informed Foster of an approaching vehicle.

Moreover, Roberts' testimony was corroborated. Lloyd witnessed the arrival of three men at the scene; Viar and the

- 5 -

police dog tracked the route of appellant and Foster from the school to a point near which a VCR belonging to the school was later found. The jury could reasonably infer from this evidence that appellant was present at the scene of the crime.

## B. HABITABILITY ELEMENT

Although the common law required that the invaded structure be the dwelling house of another, the legislature has expanded the subject of burglary to include other structures. See Crews v. Commonwealth, 3 Va. App. 531, 535, 352 S.E.2d 1, 3 (1987). The statute addresses dwelling houses as well as, inter alia, any office, storehouse, warehouse, banking house, or "other house," or any automobile, truck or trailer, if such automobile truck or trailer is used as a dwelling or place of human habitation. See Code §§ 18.2-90, 18.2-91. With respect to structures other than the dwelling house of another, the legislature specifically chose to impose the habitability element only for automobiles, trucks or trailers. Accordingly, the Commonwealth was not required to prove the school's habitability as an element of the crime in this case. A contrary reading of the statute would defeat its purpose to expand the subject of burglary to structures other than dwelling houses.

### C. SCHOOL AS SUBJECT OF BURGLARY
In construing Code § 18.2-90, the Supreme Court determined that the term "'other house' . . . placed at the end of a list of specific references to various structures[,]" all of which "share the common element of being improvements affixed to the ground," manifests legislative intent that

- 6 -

such structures be a part of the realty.

Buie v. Commonwealth, 21 Va. App. 526, 529, 465 S.E.2d 596, 597 (1996) (citations omitted).  Thus, "in order for a structure to be the subject of burglary, [it] must be permanently affixed to the ground so as to become part of the realty at the time of the unlawful entry."  Dalton v. Commonwealth, 14 Va. App. 544, 548, 418 S.E.2d 563, 565 (1992).  It must also have walls and a roof and be enclosed to a degree that presents a significant barrier to trespass.  Id.  See also Graybeal v. Commonwealth, 228 Va. 736, 740, 324 S.E.2d 698, 700 (1985); Crews v. Commonwealth, 3 Va. App. 531, 536, 352 S.E.2d 1, 3-4 (1987).  A chicken house fits the definition, see Compton v. Commonwealth, 190 Va. 48, 54, 55 S.E.2d 446, 449 (1949), but a trailer, which is not fixed to the ground, does not.  See Graybeal, 228 Va. at 739-40, 324 S.E.2d at 700.

Here, unrebutted photographic evidence established that the school is a permanent structure, fully enclosed with walls and a roof, affixed to the ground and part of the realty.  Thus, contrary to appellant's contention, the school is an "other house," and the proper subject of burglary, within the meaning of the statute.

## II. JURY INSTRUCTION

The court instructed the jury, inter alia, as follows:
> The Commonwealth must prove . . . that [appellant] was present, aiding and abetting as a principal in the second degree another person who . . . entered into . . . the Pleasant View Elementary School by helping in

some way in the commission of the crime.

Appellant argues that the trial court erred in granting this instruction because it referred specifically to the entry of "Pleasant View Elementary School" rather than to the entry of a warehouse, store house, or "other house" as defined in the statute. Appellant contends the instruction intruded upon the fact-finding function of the jury to determine whether the school was an "other house."

We will assume, without deciding, that the court erred as appellant suggests. See United States v. Gaudin, __ U.S. __, __, 115 S. Ct. 2310, 2320 (1995) ("The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged"). However, we find any such error in the present case to be harmless beyond a reasonable doubt. See Lavinder v. Commonwealth, 12 Va. App. at 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc).

As discussed above, an "other house" within the meaning of Code §§ 18.2-90 and 18.2-91 is a structure that is permanently affixed to the ground so as to become part of the realty, has walls and a roof and is enclosed to a degree that presents a significant barrier to trespass. In the present case, the evidence concerning the school's physical characteristics points to the single, inexorable conclusion that the school is an "other house" within the meaning of the statute. We accordingly find

- 8 -

beyond a reasonable doubt that the jury's verdict was not affected by any error of the court in instructing it.

III. SENTENCING

The jury found appellant guilty of statutory burglary, and the matter proceeded to sentencing. The trial court imposed the entire ten-year sentence recommended by the jury and added a one-year term, which it suspended, conditioned on appellant's successful completion of post-release supervision. See Code § 19.2-295.2. On appeal, appellant contends that the court improperly enlarged the sentence set by the jury in this case. However, appellant failed to raise such an objection during the proceedings before the trial court. Following the trial court's imposition of sentence, appellant asked, "Your Honor, could I appeal this decision." However, he made no specific argument, objecting to the increased sentence, either before the court at that time or by subsequent motion. Accordingly, his appellate contention is procedurally barred. Rule 5A:18.

We find no basis to invoke the ends of justice exception to this rule, because appellant's argument lacks merit. Appellant acknowledges that Code § 19.2-295.2 allows the court to increase a sentence under certain circumstances. However, he contends that this provision does not apply to trials by jury and cites Duncan v. Commonwealth 2 Va. App. 342, 343 S.E.2d 392 (1986), for the proposition that, within Virginia's statutory scheme, the jury determines the maximum punishment which may be imposed. We disagree with appellant's contention.

> Code § 19.2-295.2 provides, in part, that:
> the court may, in addition to any other

> punishment imposed if such other punishment
> includes an active term of incarceration
> . . . , impose a term in addition to the
> active term of not less than six months nor
> more than three years, as the court may
> determine. Such additional term shall be
> suspended and the defendant placed under
> post-release supervision upon release from
> the active term of incarceration.

The applicability of Code § 19.2-295.2 has not yet been addressed by this Court.

"The plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results." Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992). "[A] fundamental rule of statutory construction requires that courts view the entire body of legislation and the statutory scheme to determine the `true intention of each part.'" Virginia Real Estate Bd. v. Clay, 9 Va. App. 152, 157, 384 S.E.2d 622, 625 (1989) (quoting McDaniel v. Commonwealth, 199 Va. 287, 292, 99 S.E.2d 623, 627 (1957)).

Contrary to appellant's assertion, a plain reading of the statute reveals that Code § 19.2-295.2 applies to both bench and jury trials. The language is expansive and inclusive, not limiting and exclusive.

Furthermore, Duncan elucidates the following two principles underlying the statutory scheme at issue: (1) "[t]he choice of sentencing procedures is a matter for legislative determination"; and (2) under Virginia's statutory scheme, the sentence

ascertained by the jury is not final or absolute.  See 2 Va. App. at 344-45, 343 S.E.2d at 393-94.  See also Bruce v. Commonwealth, 9 Va. App. 298, 302-03, 387 S.E.2d 279, 281 (1990).

At the time Duncan was decided, Virginia's statutory scheme provided that "[w]ithin the limits prescribed by law, the [sentence] of a person convicted of a criminal offense, shall be ascertained by the jury, or by the court in cases tried without a jury."  Code § 19.2-295.  In addition, Code § 19.2-303 provided that "[a]fter conviction, whether with or without jury," the court could suspend the sentence, or a portion thereof, and order probation.  Thus, under the scheme at the time of Duncan, if the jury found the defendant guilty, it ascertained the maximum punishment to be imposed.  Duncan, 2 Va. App. at 345, 343 S.E.2d at 394.  For purposes relevant here, Code §§ 19.2-295 and 19.2-303 remain the same today.

Since Duncan, however, the General Assembly enacted Code § 19.2-295.2, which provides the court the option of imposing an additional term of incarceration.  Enactment of Code § 19.2-295.2 amended the statutory scheme in effect at the time of Duncan; the jury's ascertainment of punishment is no longer necessarily the maximum punishment which may be imposed.  Contrary to appellant's assertion, Code § 19.2-295.2 comports with the principles underlying the statutory scheme espoused in Duncan: sentencing procedure is a matter of legislative determination, and the jury's ascertainment of punishment is not absolute or final.

We find that Code § 19.2-295.2 does not conflict with Code § 19.2-295, which provides that the jury shall ascertain punishment, "[w]ithin the limits prescribed by law." Nor does it conflict with Code § 19.2-303, which allows the court to suspend a sentence recommended by the jury.[1]

Finally, appellant contends that even if the court had the authority to increase the sentence, doing so was an abuse of discretion. Appellant argues that the court had no basis for increasing the jury's sentence, noting the court's reliance on the criminal record already considered by the jury and the imposition of suspended three-year sentences in each codefendant's case.

We find that the court did not abuse its discretion in imposing the additional period of probation. The jury recommended a ten year sentence, and appellant requested that the court suspend a portion of it. The imposition of sentence was continued for two months pending the preparation of a pre-sentence report. The report showed that appellant had been convicted of at least twenty-four felonies, that he had spent nearly seventeen of the past twenty years incarcerated, and that he had failed to comply with the terms of his probation or parole

_____

[1]Appellant agrees that he has no constitutional right to jury sentencing. However, he contends that he has a Due Process right in having the court properly follow the statutory scheme in imposing sentence. He claims this right was violated by the court's deviation from the statutory scheme. Our decision that the trial court did not err renders appellant's Due Process contention moot.

three times in the past. Eight of the prior felony convictions were for statutory burglary. We find nothing improper in the court's consideration of appellant's prior criminal record notwithstanding the fact that the jury had also considered his criminal record in recommending the ten-year term. The statute clearly provides the court independent authority to control the imposition of sentence, giving it discretion to suspend or increase a jury's recommendation. While appellant's codefendants received lighter sentences, they did not have appellant's extensive criminal record. Accordingly, we find no abuse of discretion in imposing the jury sentence and the additional one-year suspended term under Code § 19.2-295.2.

For the foregoing reasons, appellant's conviction and sentence are affirmed.

Affirmed.