COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Bumgardner
Argued at Richmond, Virginia


PATRICK MARCEL PATTERSON

MEMORANDUM OPINION[*] BY
v.    Record No. 1236-99-2        JUDGE RICHARD S. BRAY
                                    MAY 9, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
William R. Shelton, Judge

Joseph W. Kaestner (Kaestner, Pitney & Jones,
P.C., on brief), for appellant.

Virginia B. Theisen, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Patrick Marcel Patterson (defendant) appeals convictions in a
bench trial for grand larceny, forgery and uttering.  He
challenges the sufficiency of an accomplice's testimony to support
the convictions.  Finding no error, we affirm the trial court.

The parties are fully conversant with the record, and this
memorandum opinion recites only those facts necessary to a
disposition of the appeal.

I.

In reviewing the sufficiency of the evidence, we consider
the record "'in the light most favorable to the Commonwealth,

---

    * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

giving it all reasonable inferences fairly deducible therefrom. In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth . . . .'" Watkins v. Commonwealth, 26 Va. App. 335, 348, 404 S.E.2d 856, 866 (1998) (citation omitted).  The credibility of the witnesses, the weight accorded testimony, and the inferences to be drawn from proven facts are matters to be determined by the fact finder.  See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).  The judgment of the trial court will not be set aside unless plainly wrong or unsupported by the evidence.  See Code § 8.01-680.

In October 1997, defendant was employed as a "senior accountant" in the "student accounts office" (office) of Virginia State University.  Routinely, the office directed correspondence to "all students who . . . have money that is owed to them from the University that have been on [the] records for one year or more without activity."  The student is requested to complete an appended inquiry, which provides the University with instructions for disposition of the funds on deposit, a current address and other data.

On October 23, 1997, the University received a response from Deboria Waytes,[1] a former student, whose correspondence from

_____

[1] Deboria Waytes did not testify.

-

the University had been previously mailed to a Washington, D.C. address. The completed inquiry requested that monies on deposit to her credit be withdrawn and forwarded to an address in Midlothian, Virginia, a former residence of defendant that he vacated in May 1997. Accordingly, a "Check Request" form, dated October 22, 1997, was generated by the office, which instructed the University to "refund [an] overpayment of account" to Waytes in the sum of $2,561.94. Alfred Washington, then the "bursar of student accounts," and another employee, Paulette Anderson Moore, identified defendant's signature at the line designated, "Requested by" on the "Check Request." A handwritten notation, "Hold for Pickup," appeared on the face of the document. The University then issued a check, dated October 23, 1997, for $2,561.94, payable to Waytes, and retained the instrument in the bursar's office.

Kimberly Cherry, defendant's student assistant, testified that defendant approached her in October 1997, promoting "a full [sic] proof plan to make a little extra money." Defendant suggested that he "generate . . . checks," which Cherry would "cash," and then "split the funds in half" with him. Cherry agreed and, in "late October of 1997," defendant telephoned, advised that he had "the check," and arranged to meet her "at the close of office." Defendant and Cherry "waited for everybody to leave," entered Washington's office and "got the [Waytes] check." Cherry recalled that defendant "signed Deboria

-

Waytes' name to it" and the two proceeded to a nearby "ATM" and deposited the check into Cherry's bank account. Once the item had "cleared," Cherry notified defendant and, as requested, delivered "his half." Moore testified that the endorsement of Waytes' name to the check "appear[s] to be similar to the handwriting of defendant."

On July 13, 1998, Cherry was arrested for the instant offenses and, in the presence of University Police Sergeant Robert H. Carmichael, III, telephoned defendant, advised that she had been "caught in the check embezzlement," and threatened "to turn him in," "if he wouldn't help [her] out." Defendant was unwilling to "talk . . . about it over the phone," but agreed to meet Cherry at a local restaurant at 6:00 p.m. that evening. Carmichael monitored the conversation "on and off," drove to the designated restaurant at the "set time" and observed defendant "at that location."

Defendant argues on brief that the trial court erroneously relied upon Cherry's contradicted and uncorroborated testimony to support the convictions.[2]

---

[2] The Commonwealth contends that defendant procedurally defaulted a challenge to the sufficiency of the evidence to prove an unauthorized endorsement. However, in the "Petition for Appeal," defendant identified the "Question Presented" as, "Whether the Uncorroborated Testimony of an Accomplice is Sufficient to Support a Conviction of a Crime Under the Facts of This Case." Under such circumstances, we will consider the argument on the merits.

-

II.

Forgery is "'the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability.'" Fitzgerald v. Commonwealth, 227 Va. 171, 173, 313 S.E.2d 394, 395 (1984) (citation omitted). Uttering, a separate and distinct offense, is comprised of "an assertion by word or action that a writing known to be forged is good and valid." Bateman v. Commonwealth, 205 Va. 595, 600, 139 S.E.2d 102, 106 (1964). Grand larceny is "the wrongful or fraudulent taking of personal goods [valued at $200 or more], belonging to another, without his assent, and with the intention to deprive the owner thereof permanently." Jones v. Commonwealth, 3 Va. App. 295, 300, 349 S.E.2d 414, 417-18 (1986); see also Code § 18.2-95.

Defendant concedes that "the uncorroborated testimony of an accomplice is sufficient without more to convict a person accused of a crime." Brown v. Commonwealth, 8 Va. App. 474, 477, 382 S.E.2d 296, 298 (1989); see also Allard v. Commonwealth, 24 Va. App. 57, 63, 480 S.E.2d 139, 142 (1997). In such instances, credibility becomes the issue, and this Court will not disturb the findings of the trial court unless the "testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991) (citation omitted). On the

-

instant record, we find Cherry's testimony neither incredible nor uncorroborated.[3]

Cherry testified, in detail, to the criminal enterprise conceived by defendant and executed jointly with her. Her evidence clearly establishes that, together, the two perpetrated forgery, uttering and grand larceny. Corroborating Cherry's evidence, Waytes' current address on her purported response to the University inquiry was a previous address of defendant, the "Check Request" emanating from defendant's office was dated prior to receipt of the response by the University, and defendant's handwriting appeared on both the "Check Request" and endorsement of the related check. Finally, defendant reported to the restaurant following the telephone conversation with Cherry, behavior which inferred involvement with her in the unlawful conduct that prompted the meeting.

We recognize that "[w]here one signs the name of another to a check, it is presumed, in the absence of other evidence, that he has authority to do so." Lewis v. Commonwealth, 213 Va. 156, 157, 191 S.E.2d 232, 233 (1972). However, an absence of authority may be proven by circumstantial evidence which "is as competent and is entitled to as much weight as direct evidence, provided it is

---

[3] "To corroborate an accomplice's testimony, independent evidence must relate 'to some fact which goes to establish the guilt of the accused' or 'tends to connect' the accused with the crime." Brown, 8 Va. App. at 478, 382 S.E.2d at 298 (citation omitted).

-

sufficiently convincing to exclude every reasonable hypothesis except that of guilt."  Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).

Here, although Waytes did not testify that defendant signed her name without authority, the evidence otherwise proved this element of the alleged forgery.  Defendant and Cherry collaborated in a "[fool]-proof plan" to unlawfully subvert University procedures through the repeated use of Waytes' name, clearly without authorization, thereby facilitating theft of the subject funds.

Accordingly, we find the evidence sufficient to support the convictions and affirm the trial court.

Affirmed.

-