COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Chaney and Lorish
Argued at Richmond, Virginia

UNPUBLISHED

MOHANNAD ABANDEH

v.      Record No. 0017-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE CLIFFORD L. ATHEY, JR.
FEBRUARY 7, 2023

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Phillip L. Hairston, Judge

Jennifer Quezada (Miriam Airington-Fisher; Bianca White;
Airington Law, PLLC, on briefs), for appellant.

Victoria Johnson, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the Circuit Court of the City of Richmond ("trial court") convicted

Mohannad Abandeh ("Abandeh") of conspiracy to commit abduction for pecuniary benefit, two

counts of abduction for pecuniary benefit, and for malicious bodily injury while a part of a mob.

The trial court sentenced Abandeh to a total of sixty-years' imprisonment with fifty-eight years

suspended.  On appeal, Abandeh assigns sixteen separate errors.  Since we find no merit in

Abandeh's fifteen assignments of error alleging that the evidence was insufficient to sustain his

convictions, and further, because he waived the remaining assignment of error due to his failure to

adequately brief the issue (*see* Rule 5A:20(e)), we affirm the judgment of the trial court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, we discard any conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

Around Christmas of 2020, Delante Winston ("Winston"), picked the lock on an electronic gaming machine ("machine") and stole $1,500. He did this inside a K Food Store ("the store") in Richmond owned by Abandeh's brother, Muhammad Abanda ("Muhammed"). After speaking with his girlfriend, Sadiqu Shabazz ("Shabazz"), concerning the theft from the machine, Winston agreed to return the stolen money to Muhammad. Shabazz then contacted Muhammad, advised him of the theft, and she and Winston then went to the store to discuss how to rectify the situation. Winston and Shabazz arrived at the store together on December 26, 2020, at 7:53 p.m. as shown on the store's video recording. Both Winston and Shabazz testified at trial that the store was open and that they initially waited just inside the front door of the store when a group of men including Muhammad and Abandeh[1] entered the front door. Abandeh locked the front door after entering with the group of men whereupon Muhammad ordered Winston to the back of the store and into a back room, which was separated from the other areas of the store by a curtain.

Shabazz testified that she remained seated in a chair in the front of the store while waiting for Winston who was in the back room. At about 7:55 p.m., Shabazz testified that she heard loud

---

[1] The Commonwealth introduced video footage recorded by the store's surveillance camera of the arrival of the group of men at the store and of other relevant events that occurred in the main portion of the store in the hours that followed.

voices coming from the back room and could tell that "things were getting heated." A few minutes later, Abandeh came out of the back room and asked her if she possessed a weapon. Shabazz replied that she did not possess a firearm whereupon Abandeh reached into Shabazz's coat pocket before locking the front door of the store again. At 7:58 p.m., Muhammad came out and ordered Shabazz to the back room where she saw the group of men assaulting Winston.

She testified that Muhammad then seized her cell phone, and she recalled seeing about seven armed men in the back room, including Muhammad and Abandeh. She testified that one of the armed men hit Winston in the head with a gun; Winston testified that this blow rendered him briefly unconscious. All of the men, with the exception of Muhammad and Abandeh, were taking turns striking Winston, who was handcuffed. She stated that at some point, Winston was "balled up in the corner" with multiple people punching and kicking him. In addition, one of the assailants, in Abandeh's presence, burned Winston with a cigar.

Winston testified that during the beating Abandeh was not wearing a mask and that Abandeh's face was "imprinted in [Winston's] mind." He also testified that Abandeh sat directly across from him and got the others "riled up" by telling them that Winston had stolen money from gambling machines at Rosie's, a local gambling establishment. Abandeh told the others that Winston had been on the news for stealing at Rosie's, so the rest of the group "want[ed him] to go places to get some money," but would not permit him to leave the back room. Eventually, Winston was forced to go to the gaming machine to demonstrate how he had picked the lock. Winston demonstrated the process three times, with Abandeh right beside him watching intently.

Shabazz testified that while she was held in the back room, Abandeh and Muhammad also asked her for "money to replace the money." Shabazz did not have money in her account, so she called family members and friends and asked them to transfer money to her bank account. At 9:02 p.m., Abandeh and two others forced Shabazz to withdraw money from the ATM

machine in the store. Abandeh walked away during the attempted withdrawal but returned a few minutes later to check the progress of the transaction. Shabazz testified that she received "[a] couple thousand" dollars and one of the assailants grabbed the money as it came out of the ATM. Following the cash withdrawal, Shabazz was still not free to leave and returned to the back room with her assailants.

According to the video footage, Abandeh left the store at 11:12 p.m. on December 26, 2020, and there is no additional footage showing that he returned to the store that evening. However, the ordeal in the back room continued. Winston was abused in the back room for some subsequent time and eventually transported to another location where he was further maltreated. Winston managed to escape and call for help when being subsequently transported again. By that time, Shabazz had been taken elsewhere by a different subset of the group, and she too managed to escape.

On January 8, 2021, after Muhammad's arrest, Abandeh provided the police with surveillance camera footage from the store showing Winston stealing there on December 25, 2020. Abandeh said that he and Muhammad did not call the police when they discovered the theft on December 25, 2020, because it was a dangerous neighborhood and Abandeh was afraid. Abandeh said that his cousin had been murdered at that same store and the police did nothing about it. Abandeh told the police that Winston had been released with the agreement that he would produce the stolen money before 3:00 p.m. on December 27, 2020, or else Muhammad would contact the police about the theft.

After the Commonwealth rested its case at trial, the trial court asked if Abandeh wished to testify. Defense counsel stated that he had reviewed that matter with Abandeh "extensively" and that their "last discussions were that he was electing not to testify." The trial court granted a recess to allow Abandeh to decide whether to testify. After the recess, defense counsel indicated

that he was not going to present any evidence. Through colloquy with the trial court, Abandeh himself acknowledged that he had the right to testify, that he had discussed the matter with his attorneys, and that he had decided of his own free will not to testify.

The jury found Abandeh guilty of conspiracy to abduct Winston for pecuniary gain, abduction of Winston and Shabazz for pecuniary gain, and malicious bodily injury while a part of a mob. The jury acquitted Abandeh of two counts of using a firearm in the commission or attempted commission of a felony.

At a post-trial hearing on Abandeh's motion to reconsider and to set aside the verdict based upon new evidence, Mosaab Kofahi, Abandeh's cousin, testified that before Abandeh's trial Muhammad said that Abandeh was not present when Winston was assaulted. Kofahi was subpoenaed for Abandeh's trial but was not called as a witness.

Abandeh's wife, Linda Abandeh ("Linda"), testified at the hearing that following a phone conversation with Muhammad on December 26, 2020, Abandeh said that he needed to go to Muhammad's store. Muhammad told Abandeh that someone had been stealing from the store, and Abandeh went there so that Muhammad would contact the police. After several phone calls during that evening, Abandeh spoke with Linda by phone for the last time at about 11:42 p.m. as he was retiring for the night. Linda was present and available to testify at Abandeh's trial, but she was never called as a witness. Linda indicated that after the cousin was shot and killed, it was standard practice to lock the door to the store at night even though it was open for business.

Abandeh testified at the hearing that he told his attorney he wanted to testify at trial, but the attorney would not permit it. Abandeh said he went to the store on December 26, 2020, because he was worried about Muhammad. Abandeh claimed that no one harmed Winston that night or detained him against his will.

At the conclusion of the hearing, the trial court found no reason to disturb the jury's verdict and denied the motion to set aside. This appeal follows.

## II. ANALYSIS

Abandeh challenges the sufficiency of the evidence to sustain his convictions. We address Abandeh's numerous assignments of error challenging the sufficiency of the evidence as they relate to each of the crimes of which he was convicted.

### A. *Standard of Review*

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

### B. *The trial court did not err in denying Abandeh's motion to strike the evidence as to the charge of conspiracy to commit abduction.*

Abandeh contends that the evidence was insufficient to prove his guilt of conspiracy to commit abduction of Winston for pecuniary benefit.[2] We disagree.

---

[2] The indictment and jury instructions specified that the charged crime was conspiracy to commit abduction of Winston, not Shabazz, for pecuniary gain. Thus, we do not consider any contention that the evidence failed to prove that Abandeh conspired to abduct Shabazz.

"To prove a conspiracy, the Commonwealth must offer evidence of 'an agreement between two or more persons by some concerted action to commit an offense.'" *James v. Commonwealth*, 53 Va. App. 671, 677-78 (2009) (quoting *Wright v. Commonwealth*, 224 Va. 502, 506 (1982)); *see also* Code § 18.2-22. "It is a rare case where any 'formal agreement among alleged conspirators' can be established." *Id.* at 678 (quoting *Wilder Enter. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1141 (4th Cir. 1980)). Thus, "[t]he existence of a conspiracy may be proven by circumstantial evidence." *Chambliss v. Commonwealth*, 62 Va. App. 459, 466-67 (2013). Because conspirators often perform different roles in pursuit of their criminal plan, where the Commonwealth proves that the conspirators "by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment, the [factfinder] will be justified in concluding that they were engaged in a conspiracy to effect that object." *James*, 53 Va. App. at 678 (alteration in original) (emphasis omitted) (quoting *Charity v. Commonwealth*, 49 Va. App. 581, 586 (2007)). "[A] conspiracy may be inferred by actions alone." *Carr v. Commonwealth*, 69 Va. App. 106, 119 (2018) (quoting *Charity*, 49 Va. App. at 587). Moreover, because "the crime of conspiracy is complete when the parties agree to commit an offense," "no action subsequent to the formation of the agreement can exonerate the conspirator of that crime" and "withdrawal is not a defense." *Gray v. Commonwealth*, 260 Va. 675, 682 (2000).

Contending that the evidence was insufficient to prove that he agreed with others to commit abduction, Abandeh claims that the Commonwealth's evidence was not credible. However, in convicting Abandeh, the jury necessarily credited Winston's and Shabazz's testimony and rejected any testimony that Abandeh was not present in the back room during the

- 7 -

beating.[3]  "The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts."  *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)).  "Thus, a trial court's judgment will not be disturbed on appeal unless it is plainly wrong or without evidence to support it."  *Young v. Commonwealth*, 275 Va. 587, 590-91 (2008).

Contrary to Abandeh's assertion, the evidence proved much more than his mere presence at the store on the night of December 26, 2020.[4]  Muhammad knew that Winston was coming to the store to discuss Winston's theft, which Muhammad and Abandeh had discovered the previous day.  After Winston and Shabazz arrived at the store, Abandeh, Muhammad, and others who participated in the incident entered the store at the same time.  All of them were armed with guns, and one had handcuffs.  Abandeh locked the door to the store behind them.  Within minutes, Muhammad accosted Winston at gunpoint and took him to the back room.  After Shabazz noticed sounds of a commotion in the back room, Abandeh approached, asked if she was armed, and reached for her pocket.  Abandeh remained near Shabazz for several minutes until Muhammad appeared and, at gunpoint, ordered her to the back room also.

---

[3] Abandeh also argues that Winston and Shabazz provided incredible testimony because of an alleged inability on their part to distinguish between Abandeh and his brother Muhammed. This simply is not supported by the record.  Each identified the defendant at trial, differentiated between the two in their testimony, and identified the defendant on surveillance videos admitted as evidence at trial.

[4] Abandeh repeatedly asserts on brief that his purpose in going to the store on December 26, 2020, was "because he feared for his brother's life."  Abandeh elected not to testify at trial, so there was no trial testimony to this effect for the jury to consider.  In fact, the evidence at trial was that Abandeh told the police on January 8, 2021, only that he did not immediately report Winston's theft to the police because he was afraid.  There was no evidence that he told the police that he went to the store on December 26, 2020, because he feared for Muhammad's safety.

Abandeh was in the back room in the hours that followed while the assailants beat Winston and burned him with a cigar. Abandeh and Muhammed demanded money to repay what Winston had stolen, and Abandeh told the others that Winston could get money from another gambling establishment. With Abandeh watching, Winston demonstrated how he had broken into the gambling machine there at the store. Abandeh also was nearby when assailants had Shabazz use the ATM machine to obtain cash that she had solicited from her family and friends.

The testimony of Winston and Shabazz about Abandeh's participation in various aspects of the incident was corroborated by the numerous video recordings from the store's surveillance camera that the Commonwealth introduced into evidence. The jury was permitted to assess and assign appropriate weight to the video evidence that was presented at trial. *See Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022).

Although Abandeh left the store before other members of the group transported Winston and Shabazz elsewhere and detained them overnight, the crime of conspiracy was already complete. Abandeh's participation in the incident at its inception and for the three hours that followed provided circumstantial proof that he had agreed with the assailants to detain Winston to force him to pay back the money he had stolen. Upon these facts and circumstances, a reasonable finder of fact could conclude that Abandeh agreed to participate in abduction for pecuniary benefit and that he was guilty of conspiracy.

C. *The trial court did not err in denying Abandeh's motion to strike the evidence as to the two charges of abduction for pecuniary benefit.*

Abandeh also challenges the sufficiency of the evidence to sustain his two convictions of abduction for pecuniary benefit. We again find the evidence sufficient.

Under Code § 18.2-47(A), anyone who "by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the

intent to deprive such other person of his personal liberty" is guilty of abduction. Abduction of "any person with the intent to extort money or pecuniary benefit" is punishable as a Class 2 felony. Code § 18.2-48(i).

Abandeh submits that the evidence did not prove that he shared the criminal intent to abduct Winston and Shabazz or was part of an agreement to abduct them. "A principal in the first degree is the actual perpetrator of the crime. A principal in the second degree, or an aider or abettor as he is sometimes termed, is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime." *Muhammad v. Commonwealth*, 269 Va. 451, 482 (2005) (quoting *Jones v. Commonwealth*, 208 Va. 370, 372 (1967)). As this Court has held on numerous occasions, a "principal in the second degree may be indicted, tried, convicted and punished as if a principal in the first degree." *Allard v. Commonwealth*, 24 Va. App. 57, 62 (1997). While the Commonwealth must prove that the offense was committed by the principal in the first degree to sustain a conviction of a principal in the second degree, *see Sutton v. Commonwealth*, 228 Va. 654, 665 (1985), proof of "actual participation in the commission of the crime is not necessary" "to make a person a principal in the second degree," *Muhammad*, 269 Va. at 482 (quoting *Jones*, 208 Va. at 372). To support a conviction under this theory, the Commonwealth must prove that the accused was present at the scene of the crime and shared the criminal intent of the perpetrator or committed some act in furtherance of the offense. *See Allard*, 24 Va. App. at 62. Thus, while mere presence at the scene of a crime alone does not constitute aiding and abetting, "accompanying a person with full knowledge that the person intends to commit a crime and doing nothing to discourage it bolsters the perpetrator's resolve, lends countenance to the perpetrator's criminal intentions, and thereby aids and abets the actual perpetrator in the commission of the crime." *Pugliese v. Commonwealth*, 16 Va. App. 82, 94 (1993).

- 10 -

As previously stated, Abandeh's actions in the store on the night of December 26, 2020, demonstrated that he and the other assailants agreed to detain Winston. In addition, Abandeh, who was armed with a gun, was present in the back room where Winston and Shabazz were held involuntarily, and Winston was beaten. Abandeh's presence lent countenance to the actions of those who beat, stomped, and burned Winston. It was Abandeh who announced that Winston had stolen from Rosie's and could get more money for the assailants. Abandeh was among the assailants who stood watch as Shabazz operated the ATM machine to comply with Abandeh's and Muhammad's demands for cash. In this way, the evidence proved that Abandeh participated in the abductions of Winston and Shabazz as a principal in the second degree.

Abandeh next argues that the evidence did not prove that he possessed the intent to obtain pecuniary benefit in the abductions. He asserts that he "did not seek to have money returned to him or to personally benefit financially."

Under Code § 18.2-48(i), "[t]he statutory element is the *intent* to extort money or obtain a pecuniary benefit. It is not necessary that the criminal actually succeed in realizing his desired gain." *Barnes v. Commonwealth*, 234 Va. 130, 137 (1987).

The Commonwealth's evidence proved that Abandeh, Muhammad, and the other assailants detained Winston and Shabazz for the purpose of forcing repayment of money taken from the store's gambling machine. The assailants beat, stomped, and burned Winston, all in Abandeh's presence, to force Winston to repay the money he had stolen. Indeed, the evidence proved that, at the group's insistence, Shabazz convinced family members and friends to transfer money to her account. With Abandeh nearby, the co-conspirators grabbed the money as Shabazz withdrew it from the ATM. The evidence thus proved that Abandeh and the others detained the two victims for the purpose of obtaining money from them.

Abandeh further contends that he did not intentionally prevent Winston and Shabazz from leaving the store, but that he "only wanted to ensure the safety of himself and his brother by inquiring rather [sic] or not Ms. Shabazz had any weapon and by directing her to the ATM." However, "[t]he fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." *Knight v. Commonwealth*, 61 Va. App. 148, 161 (2012) (quoting *Moody v. Commonwealth*, 28 Va. App. 702, 706-07 (1998)).  As a direct result of the actions of Abandeh, Muhammad, and the other armed assailants, Winston and Shabazz were unable to leave and were detained against their will at the store for hours.  Winston and Shabazz both testified that they never felt free to leave the store.[5]  Accordingly, a reasonable finder of fact could conclude that Abandeh intended to, and actually did, deprive both Winston and Shabazz of their liberty and that he was guilty of two counts of abduction for pecuniary benefit.

D.  *The evidence was sufficient to support a conviction for malicious injury by a mob.*

Abandeh challenges the sufficiency of the evidence supporting his conviction for malicious injury by a mob.  We again find the evidence sufficient.

Under Code § 18.2-41, any person "composing a mob which shall maliciously or unlawfully shoot, stab, cut or wound any person, or by any means cause him bodily injury with the intent to maim, disable, disfigure or kill him" is guilty of a Class 3 felony.[6]

> In order to sustain a conviction of maiming by mob under Code § 18.2-41, the evidence must establish that the accused was a member of a group composing a mob; that the mob caused the victim bodily injury; and that the mob acted with the malicious intent "to maim, disable, disfigure or kill" the victim.

---

[5] Indeed, although Abandeh left the store at 11:12 p.m., the captors continued to detain Winston and Shabazz until the following day, when they both managed to escape.

[6] In his reply brief, Abandeh states that he was convicted "under both [§] 18.2-42.2 and [§] 18.2-42 (assault or battery by mob), but only challenged his conviction under [§] 18.2-42.2." The record reflects that Abandeh was convicted under Code § 18.2-41.  There is no Virginia code section numbered § 18.2-42.2.

*Commonwealth v. Leal*, 265 Va. 142, 146 (2003). "A 'mob' is statutorily defined as '[a]ny collection of people, assembled for the purpose and with the intention of committing an assault or a battery upon any person or an act of violence as defined in [Code] § 19.2-297.1[.]'" *Barnett v. Commonwealth*, 73 Va. App. 111, 118 (2021) (alterations in original) (quoting Code § 18.2-38). "The existence of a mob is a question of fact 'evaluated on a case-by-case basis.'" *Id.* (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 635 (2011)).

Abandeh argues that the evidence did not prove that he "place[d] his hands on" Winston "at any point during the time" Abandeh was in the store.[7] However, "[a]lthough the Commonwealth must prove that a defendant was a member of a mob when the wounding actually occurred, it does not need to prove that the defendant 'actively encouraged, aided, or countenanced the act[.]'" *Id.* (quoting *Abdullah v. Commonwealth*, 53 Va. App. 750, 759 (2009)). "Rather, 'criminal accountability flows from being a member of the mob, regardless of whether the member aids and abets in the [wounding].'" *Id.* at 119 (alteration in original) (quoting *Harrell v. Commonwealth*, 11 Va. App. 1, 8 (1990)). "Further, although the Commonwealth must prove that a defendant shared the mob's common intent to commit a violent act, it does not need to prove that the defendant agreed to the manner or nature of the injury inflicted by the mob." *Id.* Thus, we reject the contention that Abandeh was not responsible for the physical harm inflicted upon Winston by other assailants in the back room of the store.

Abandeh further contends that the trial court erred in refusing to reduce the mob violence charge to misdemeanor assault by a mob because he lacked malicious intent to harm Winston. "In order to sustain a conviction of assault or battery by mob under Code § 18.2-42, the evidence

---

[7] Abandeh asserts that the evidence failed to prove that he "conspired to unlawfully wound" Winston. However, Abandeh was convicted of conspiracy to commit abduction, not conspiracy to commit unlawful wounding.

- 13 -

must establish that the accused was a member of a mob and that the mob committed simple assault or battery." *Leal*, 265 Va. at 146. "The requisite intent under Code § 18.2-41 to maliciously maim, disable, disfigure or kill is the only difference between the two offenses." *Id.* (quoting *Leal v. Commonwealth*, 37 Va. App. 525, 532 (2002)). "Determining a defendant's intent 'is a factual question, which lies peculiarly within the province of the jury.'" *Barnett*, 73 Va. App. at 120 (quoting *Hughes v. Commonwealth*, 18 Va. App. 510, 519, (1994) (*en banc*)).

"Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. [Malicious intent to wound] may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013) (alteration in original). "Malice is not confined to ill will, but includes any action flowing from a wicked or corrupt motive, done with an evil mind or wrongful intention, where the act has been attended with such circumstances as to carry in it the plain indication of a heart deliberately bent on mischief." *Williams v. Commonwealth*, 13 Va. App. 393, 398 (1991).

The evidence at trial supported a reasonable conclusion that the group of assailants, including Abandeh, attacked Winston with malicious intent. Immediately after he was ordered to the back room at gunpoint, one of the assailants struck Winston in the head with a gun. Winston testified that the force of the blow rendered him unconscious. All of the men in the back room were armed with guns. Other than Abandeh and Muhammad, the members of the group took turns striking Winston, who was handcuffed. At one point, Winston was "balled up" on the floor while the group struck him. During the attack, which lasted several hours, one of the assailants used a cigar to burn Winston. From these facts and circumstances, a reasonable finder of fact could conclude beyond a reasonable doubt that the group intended to maliciously wound,

and not merely assault, Winston and the trial court did not err in refusing to reduce the charge to a misdemeanor assault by a mob.

E. *The trial court did not err in refusing to grant Abandeh's motion to reconsider and vacate his convictions.*

Abandeh argues that the trial court erred in denying his motion to reconsider and vacate his convictions based upon newly discovered evidence. Abandeh's argument on this assignment of error contains no citation to legal authority to support his claim.

Rule 5A:20(e) requires an opening brief to contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." "Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). "We require adherence to this rule because '[a] court of review is entitled to have the issues clearly defined and to be cited pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research.'" *Id.* (alteration in original) (quoting *Jones*, 51 Va. App. at 734). "To ignore such a rule by addressing the case on the merits would require this court to be an advocate for, as well as the judge of the correctness of, [appellant's] position on the issues he raises." *Id.* (alteration in original) (quoting *Jones*, 51 Va. App. at 734-35).

"[W]hen a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant," this Court may treat the question as waived. *Parks v. Parks*, 52 Va. App. 663, 664 (2008); *see also Fadness v. Fadness*, 52 Va. App. 833, 851 (2008) ("If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention."). We find that Abandeh's failure to provide argument and legal authority to support this issue is significant, treat the question as waived, and we do not consider it.

## III. CONCLUSION

For the foregoing reasons, we can find no error and therefore affirm the judgment of the trial court.

*Affirmed.*